IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DAYTON NAKANELUA and JEANNE ENDO,<br><br>Plaintiffs,<br>vs.<br><br>UNITED PUBLIC WORKERS, AFSCME, LOCAL 646, AFL-CIO and AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES,<br><br>Defendants. | CIVIL NO. 20-00442 JAO-KJM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS UNITED PUBLIC WORKERS, AFSCME LOCAL 646, AFL-CIO and AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES' MOTION TO DISMISS COMPLAINT and REQUEST FOR JUDICIAL NOTICE** |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS UNITED PUBLIC WORKERS, AFSCME LOCAL 646, AFL-CIO and AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES' MOTION TO DISMISS COMPLAINT and REQUEST FOR JUDICIAL NOTICE**

Plaintiffs Dayton Nakanelua ("Nakanelua") and Jeanne Endo ("Endo") (collectively, "Plaintiffs") brought this lawsuit asserting claims under federal labor statutes and state law against the United Public Workers, AFSCME, Local 646, AFL-CIO ("UPW") and its parent organization, the American Federation of State, County and Municipal Workers ("AFSCME") (collectively, "Defendants"). Defendants move to dismiss Plaintiffs' Complaint and request that the Court take judicial notice of certain documents related to this case. *See* ECF No. 11

("Motion"). For the following reasons, Defendants' Motion is GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND

### A. Facts[1]

UPW is a labor union that represents approximately 13,000 members across the State of Hawai'i, most of whom are state, county, and city employees. ECF No. 1 ¶ 7. AFSCME is UPW's parent organization. *Id.* ¶ 4. UPW is governed by the UPW Constitution, among other documents, while AFSCME is governed by its International Constitution. *Id.* ¶¶ 14–15. Plaintiffs were members of UPW and/or AFSCME at all relevant times. *Id.* ¶ 17.

Nakanelua assumed the position of State Director of UPW in 2004. *Id.* ¶ 9. Endo was appointed as UPW's Administrator of Fiscal and Membership Services ("FMS Administrator") in 2004. *Id.* ¶ 12. As the FMS Administrator, Endo was also UPW's sole procurement officer; managed UPW's computer and communications systems; managed UPW's Human Resources department; served as food and beverage coordinator, special events coordinator, and mailing coordinator; and was responsible for coordinating the repairs and maintenance of UPW's offices across the State. *Id.* ¶ 13.

---

[1] These facts are based on the allegations in the Complaint, ECF No. 1, which are taken as true for purposes of the Motion.

On April 12, 2019, Alton Nosaka, the Vice President of the UPW Division for Hawaiʻi Island ("Nosaka"), filed a formal charge against Nakanelua, accusing him of "'misappropriation of Union PAC [Political Action Committee] funds.'" *Id.* ¶ 18 (brackets in original). Nosaka filed two more formal charges against Nakanelua, including a charge dated April 30, 2019 accusing him of "'submit[ting] hours of work, while he was alleged[ly] at home'" constituting "'theft and embezzlement of union funds,'" and a charge dated June 6, 2019, accusing him of sending too many UPW staff to an AFSCME convention and failing to obtain proper authorization before hiring two law firms. *Id.* ¶¶ 19–20 (brackets in original). In April 2019, Nosaka also filed a formal charge against Endo accusing her of personally using UPW's corporate frequent flyer miles. *Id.* ¶ 21.

In June 2019, AFSCME's president determined that an audit of UPW's financial books and records should precede the consideration of the charges against Plaintiffs. *Id.* ¶ 22. AFSCME's auditors conducted a review of UPW's financial policies and practices for the period between January 2017 and July 2019. *Id.* The auditors produced a draft report in October 2019 ("Draft Report"), which identified various potential issues relating to UPW's accounting procedures. *Id.* ¶ 23.

In November 2019, Nakanelua provided a response to the Draft Report, including explanations and supporting documentation in response to each issue identified. *Id.* ¶ 24. Nakanelua submitted certifications attesting that certain

purchases were for union purposes where those purchases lacked documentation. *Id.* Nakanelua also gave the auditors an Action Plan outlining specific steps UPW would take to correct issues identified in the Draft Report and update UPW's financial system. *Id.*

AFSCME issued its final audit report ("Final Report") in December 2019. *Id.* ¶ 25. The Final Report identified accounting and financial control deficiencies at UPW, including a failure to obtain preauthorization for purchases, a failure to maintain supporting documentation for purchases, a lack of controls over the purchase and distribution of gift cards, and a lack of detailed PAC expenditures. *Id.* ¶ 26. The Final Report did not include any findings that any purchases, reimbursements, or other expenditures were improper or not for union purposes. *Id.*

On January 21, 2020, Nosaka filed amended charges against Nakanelua and another UPW officer. *Id.* ¶ 27. The only charge specifically alleged against Nakanelua asserted that Nakanelua submitted certification documents as receipts for illegal reimbursements. *Id.* The remainder of the amended charges were new charges directed against the other UPW officer, aside from a charge that did not identify a specific individual, but alleged the misuse of union funds for Thanksgiving and Christmas luncheons without proper authorization. *Id.*

That same day, Nosaka filed amended charges against Endo, accusing her of the following: engaging in the misappropriation, embezzlement, and improper and illegal use of union funds by using her own personal credit cards rather than UPW checks for union purchases in order to gain personal credit card points; misusing union funds by paying for gift cards and Christmas luncheons without proper authorization; submitting false financial reports for 2017 and 2018; providing certification documents as receipts for illegal reimbursements; giving away gift cards to former State Executive Board ("SEB") members without proper approval; and receiving per diem payments without the requisite overnight stay. *Id.* ¶ 28.

In March 2020, two Trial Officers from AFSCME presided over a trial and considered the original and amended charges against Plaintiffs in addition to related charges against four other UPW officers, directors, and/or employees. *Id.* ¶ 29. Plaintiffs submitted detailed written responses and evidence and provided testimony regarding each accusation. *Id.* ¶ 30.

The Trial Officers issued their order on April 30, 2020 (the "Decision"), *id.* ¶ 31, clearing Nakanelua of any wrongdoing in connection with the allegations that he: (1) was not working when he claimed to be; (2) sent too many UPW staff members to AFSCME's convention and study tour; (3) failed to obtain proper authorization before hiring two law firms; and (4) failed to obtain authorization for the UPW Thanksgiving and Christmas luncheons. *Id.* ¶ 32. The Trial Officers

found that UPW SEB's policy regarding PAC contributions conflicted with UPW's Constitution as the latter required the preapproval of political contributions. *Id.* ¶ 33. Because the lack of preapprovals had been a long-standing practice, the Trial Officers issued a warning to Nakanelua and instructed UPW to reform its practices to conform to the UPW Constitution. *Id.* The Trial Officers did not find that any of the PAC contributions were made in improper amounts or to improper recipients, nor did they find that the payments were against UPW's interest. *Id.* The Trial Officers criticized Plaintiffs' submission of certifications to support certain purchases, but did not make any findings as to whether Plaintiffs could rely on the certifications at trial. *Id.* ¶ 34.

The Trial Officers dismissed the charge against Endo relating to her alleged use of UPW corporate airline miles for her personal benefit and found that the charges relating to the financial reports did not violate AFSCME's Constitution. *Id.* ¶ 35. The Trial Officers found that Endo received certain reimbursements and paid vendors without obtaining prior approval, but did not find that she profited from any of these practices. *Id.* ¶ 36.

The Trial Officers found Plaintiffs guilty of violating Article X, Section 2(B) of the International Constitution, which prohibits the "[m]isappropriation, embezzlement, or improper or illegal use of union funds." *Id.* ¶ 37. The Trial Officers removed Plaintiffs from their employment/offices and prohibited

Nakanelua from holding any UPW office for four years and permanently barred

Endo from holding any office or position with UPW or any AFSCME affiliate. *Id.*

Plaintiffs appealed the Decision to the AFSCME Full Judicial Panel. *Id.* ¶

38. In connection with their appeal, Plaintiffs requested the trial exhibits,

transcript, record, and other documents related to the appeal, but Defendants

refused to provide Plaintiffs the requested materials. *Id.* The Full Judicial Panel

affirmed the Decision without comment. *Id.* Plaintiffs then appealed to the

International Convention, which also affirmed the Decision without comment. *Id.*

¶ 39.

Following the issuance of the Decision, Plaintiffs were not allowed to return

to the UPW office to collect and remove their personal belongings. *Id.* ¶ 58. On

May 1, 2020, the day after Endo was terminated, UPW advised Endo that her

belongings would be delivered to her "'as soon as practicable.'" *Id.* ¶ 59. On

May 29, 2020, more than two weeks after Endo's counsel followed up with UPW's

counsel regarding Endo's belongings, UPW requested that Endo provide UPW

with a list of her personal belongings and the location of such items. *Id.* ¶ 60. On

June 9, 2020, Endo provided UPW with the requested list, which included personal

items, including items of high value, which were in her office and other locations

inside of the UPW building. *Id.* ¶ 61.

UPW returned some of Endo's belongings on August 18, 2020, but refused to provide numerous items, including laptops, a computer, printers, jewelry, office accessories, watches, a die cut machine, tools, money, and paper goods. *Id.* ¶ 62. In a letter dated August 19, 2020, UPW informed Endo that it was withholding these items because they were believed to be either UPW's property or related to questions regarding the expenditure of UPW funds and that it would continue to retain such property until Endo provided evidence that she purchased the items with personal funds or until the review and investigation into UPW's financial transactions was completed. *Id.* ¶ 63. Endo lacks supporting documentation for some of her belongings as they were either gifts, inherited from her late brother, or purchased at auction. *Id.* ¶ 64.

**B.    Procedural History**

Plaintiffs commenced this action on October 14, 2020 by filing their Complaint, ECF No. 1, asserting the following claims: Count I – Violation of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) (both Plaintiffs' claim against both Defendants); Count II – Violation of Section 101(a)(5) of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(5) (both Plaintiffs' claim against both Defendants); and Count III – Conversion (Endo's claim against UPW). Plaintiffs pray for compensatory and

general damages; attorneys' fees and costs; prejudgment interest; and punitive damages.  *Id.* at 18.

On November 25, 2020, Defendants filed their Motion to Dismiss Complaint.  ECF No. 11.  Defendants' Motion included a Request for Judicial Notice regarding Exhibits "A" through "N," which were attached to the Motion. ECF No. 11-2.

On December 21, 2020, Plaintiffs filed their Memoranda in Opposition to Defendants' Motion and Request for Judicial Notice.  ECF Nos. 19–20.

On December 30, 2020, Defendants filed their Replies in support of their Motion and Request for Judicial Notice.  ECF Nos. 21–22.

On January 12, 2021, the Court issued an Entering Order directing the parties to brief the issue of whether Plaintiffs have standing to prosecute Count II. ECF No. 24.  The parties filed their supplemental briefs on January 14, 2021.  ECF Nos. 25–26.

The Court held a hearing on the Motion on January 22, 2021.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") 12(b)(6) authorizes dismissal of a complaint that fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a Rule 12(b)(6) motion to dismiss, "the court accepts the facts alleged in the complaint as true," and "[d]ismissal can be based on the lack of a

cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)) (alteration in original). However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citation omitted). Furthermore, the court need not accept as true allegations that contradict matters properly subject to judicial notice. *See Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The tenet that the court must accept as true all the allegations contained in the complaint does not apply to legal conclusions. *See id.* As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)) (some alterations in original). If dismissal is ordered, the plaintiff should be granted leave to amend unless it is clear that the claims could not be saved by amendment. *See Swartz v. KPMG LLP*, 476 F.3d 756, 760 (9th Cir. 2007) (citation omitted).

## III. DISCUSSION

### A. Extrinsic Evidence

The Court begins its analysis by assessing whether it is appropriate to consider the extrinsic evidence that both sides attached to their moving papers.

"When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003) (citations omitted). "A court *may*, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908 (emphasis added) (citations omitted).

The Court may take judicial notice of some public records and "adjudicative facts that are 'not subject to reasonable dispute.'" *Id.* at 908–09 (quoting Fed. R. Evid. 201(b)).

Under the incorporation by reference doctrine, the Court may consider a document not attached to a complaint where "the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (citations omitted). "[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Id.* (citation omitted).

**1. Defendants' Request for Judicial Notice**

Defendants submitted a Request for Judicial Notice with their Motion, requesting that the Court take judicial notice of 14 exhibits. ECF No. 11-2. Plaintiffs do not object to the Court considering nine of these exhibits, so long as the Court does not consider the documents as evidence that establishes the truth of the matters asserted therein. ECF No. 20 at 2. Plaintiffs object to the Court's consideration or judicial notice of the remaining exhibits. *Id.* at 4. The following table identifies each exhibit and the Court's ruling as to whether it will consider the exhibit in deciding the Motion.

| **Exhibit** | **Plaintiffs' Position** | **The Court's Ruling** |
|---|---|---|
| Exhibit "A": UPW Constitution | No Objection | The Court need not consider the text of the UPW Constitution in order to decide this Motion. As set forth below, none of the Court's rulings rely on an examination of what the UPW Constitution says. |
| Exhibit "B": International Constitution | No Objection | Plaintiffs rely extensively on certain provisions of the International Constitution in Count I of the Complaint and there is no dispute as to the relevance or authenticity of the International Constitution. Even if the incorporation by reference doctrine did not apply, it would be appropriate for the Court to take judicial notice of the International Constitution. *See Oso Grp., Ltd. v. Bullock & Assocs., Inc.*, No. 09-1906 SC, 2009 WL 2422285, at *2 n.3 (N.D. Cal. Aug. 6, 2009) (taking judicial notice of a union's constitution and bylaws). |
| Exhibit "C": Nosaka's April 4, 2019 charge letter against Endo | No Objection | In Counts I and II, Plaintiffs allege that the various charges against them failed to conform to the requirements in the International Constitution regarding the requisite details that charges must contain, as well as requirements in the Labor-Management Reporting and Disclosure Act ("LMRDA"). At the hearing, Plaintiffs' counsel clarified that these claims are based only on the January 21, 2020 amended charges (Exhibits "L" and "M") and that the four original charges were referenced only to illustrate the relative deficiency of the amended charges. The Complaint therefore necessarily relies on the amended charges and there is no dispute as to their authenticity. The Court finds it unnecessary to consider the charges that |

| | | |
|---|---|---|
| | | are outside the scope of Plaintiffs' claims (Exhibits "C" through "F"). The Court therefore opts to consider only Exhibits "L" and "M" in order to examine whether they conform to the requirements set forth in the International Constitution and the LMRDA, respectively, and denies the request to take judicial notice of Exhibits "C" through "F." The Court does not accept the contents of the amended charges as true for purposes of ruling on the Motion. |
| Exhibit "D": Nosaka's April 12, 2019 charge letter against Nakanelua and another UPW officer | No Objection | *See* Ruling on Exhibit "C," *supra*. |
| Exhibit "E": Nosaka's April 30, 2019 charge letter against Nakanelua | No Objection | *See* Ruling on Exhibit "C," *supra*. |
| Exhibit "F": Nosaka's June 6, 2019 charge letter against Nakanelua | No Objection | *See* Ruling on Exhibit "C," *supra*. |
| Exhibit "G": AFSCME President's June 20, 2019 letter to Nakanelua advising Nakanelua that AFSCME will take jurisdiction over the charges filed by Nosaka and that an audit will take place. | Object | Plaintiffs do not explicitly reference this letter in the Complaint. Nor is an examination of this letter pertinent to the Court's analysis. The Court therefore denies the request to take judicial notice of the contents of this letter for purposes of ruling on the Motion. |

| | | |
|---|---|---|
| Exhibit "H": Nakanelua's June 25, 2019 letter to AFSCME's president regarding the UPW audit | Object | Plaintiffs do not reference this letter or its contents in the Complaint. Nor is an examination of this letter pertinent to the Court's analysis. The Court therefore denies the request to take judicial notice of the contents of this letter for purposes of ruling on the Motion. |
| Exhibit "I": AFSCME's Director of Accounting and Auditing's October 2, 2019 letter to Nakanelua transmitting the Draft Report | Object | While Plaintiffs reference the Draft Report in the Complaint, the Court agrees with Plaintiffs that incorporation by reference is inappropriate because the Draft Report does not form the basis of Plaintiffs' claims. *See* ECF No. 20 at 4–5. Further, the Court does not find the Draft Report useful for purposes of ruling on the Motion. The Court therefore denies the request to take judicial notice of the contents of this letter for purposes of ruling on the Motion. |
| Exhibit "J": Nakanelua's November 8, 2019 letter responding to the Draft Report | Object | While Plaintiffs reference Nakanelua's response to the Draft Report in the Complaint, the Court agrees with Plaintiffs that incorporation by reference is inappropriate because the Draft Report does not form the basis of Plaintiffs' claims. *See* ECF No. 20 at 4–5. Further, the Court does not find Nakanelua's letter useful for purposes of ruling on the Motion. The Court therefore denies the request to take judicial notice of the contents of this letter for purposes of ruling on the Motion. |

| | | |
|---|---|---|
| Exhibit "K": AFSCME's Director of Accounting and Auditing's December 19, 2019 letter to Nakanelua transmitting the Final Report | Object | While Plaintiffs reference the Final Report in the Complaint, the Court agrees with Plaintiffs that incorporation by reference is inappropriate because the Final Report does not form the basis of Plaintiffs' claims. *See* ECF No. 20 at 4–5. Further, the Court does not find the Final Report useful for purposes of ruling on the Motion. The Court therefore denies the request to take judicial notice of the contents of this letter for purposes of ruling on the Motion. |
| Exhibit "L": Nosaka's January 21, 2020 amended charge against Nakanelua and another UPW officer. | No Objection | *See* Ruling on Exhibit "C," *supra*. |
| Exhibit "M": Nosaka's January 21, 2020 amended charge against Endo | No Objection | *See* Ruling on Exhibit "C," *supra*. |
| Exhibit "N": The Decision | No Objection | The Complaint references the Decision (the authenticity of which is undisputed) multiple times and necessarily relies on it as it is the disciplinary action that Plaintiffs challenge in this action. Also, the Court must review the Decision in order to address several matters raised in the Motion. The Court therefore will consider the Decision without accepting its contents as true. |

**2. Plaintiffs' Extrinsic Evidence**

Plaintiffs contend that Defendants' argument that the Complaint lacks specificity is disingenuous given that Plaintiffs included detailed arguments in the

briefs they filed in the internal union appeal, which briefs Plaintiffs attached to their Opposition, but were not referenced in the Complaint. ECF No. 19 at 10. The Court declines to consider the appellate briefs (Exhibits "1" and "2" to the Opposition) as Plaintiffs cannot skirt the requirement that they plead factual allegations giving rise to each of their claims by pointing to briefs filed in another forum.

**B. Labor Management Relations Act (Count I)**

In Count I of the Complaint, Plaintiffs allege that the charges Nosaka filed against them and Defendants' handling of the charges violated the International Constitution, giving rise to a breach of contract claim under Section 301 of the Labor Management Relations Act ("LMRA"), codified at 29 U.S.C. § 185(a).

Under Section 185(a), "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States." 29 U.S.C. § 185(a). The Ninth Circuit has recognized that "an individual may sue his or her union for a breach of a union constitution" under Section 185(a). *Kinney v. IBEW*, 669 F.2d 1222, 1229 (9th Cir. 1981). For purposes of the LMRA, union constitutions amount to contracts. *See United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. v. Local 334*, 452 U.S. 615, 621 (1981). In breach

of contract cases, the plaintiff must plead "(1) the contract at issue; (2) the parties to the contract; (3) whether Plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by Defendants; and (5) *when and how Defendants allegedly breached the contract*." *Ill. Nat'l Ins. Co. v. Nordic PCL Constr., Inc.*, 870 F. Supp. 2d 1015, 1034–35 (D. Haw. 2012) (emphasis added) (internal quotation marks and citation omitted).

**1. Specificity of Charges against Plaintiffs**

Plaintiffs allege that Defendants breached Article X, Section 6 of the International Constitution by failing to require that the charges against Plaintiff contain the information required thereunder. ECF No. 1 ¶ 46. Article X, Section 6 requires: "The charges shall be specific, citing in detail the nature, the date, and the circumstances of the alleged offense and, where a violation of a constitutional provision is alleged, the specific Section shall be cited, along with the specific act or failure to act which constitutes the alleged violation." ECF No. 11-4 at 117.

Defendants argue that the Court should determine whether the charges comply with the International Constitution by assessing whether the charges conform to the *LMRDA's* requirement that members facing discipline be "served with written specific charges." 29 U.S.C. § 411(a)(5); *see* ECF No. 21 at 6–7. Defendants cite Section 411(b), which states, "Any provision of the constitution and bylaws of any labor organization which is inconsistent with the provisions of

this section shall be of no force and effect."  29 U.S.C. § 411(b); *see* ECF No. 21 at

7.  Defendants then argue that the various charges contain sufficient detail based

on courts' constructions of the specificity requirement in the *LMRDA*.  ECF No. 21

at 8–9.  Defendants have not cited any caselaw that supports their position that any

procedural safeguards guaranteed by a union constitution should be construed in

accordance with the requirements guaranteed by the LMRDA, nor has the Court

found any such caselaw.  Moreover, Article X, Section 6 of the International

Constitution is not inconsistent with the LMRDA:  it defines members' right to

written charges before receiving discipline.  Accordingly, Plaintiffs can state an

LMRA claim so long as the Complaint contains sufficient factual allegations to

support Plaintiffs' claim that Defendants breached the International Constitution.

Plaintiffs allege that "the charges did not include the date or circumstances

of the alleged offenses, the specific constitutional provision allegedly violated or

the specific act that constitutes the alleged violation."  ECF No. 1 ¶ 46.  The Court

concludes that this allegation is specific enough to state a claim for a breach of the

International Constitution:  the Complaint states both "the particular provision . . .

violated" and "when and how Defendants allegedly breached the contract."  *Ill.

Nat'l Ins. Co.*, 870 F. Supp. 2d at 1034–35 (internal quotation marks and citation

omitted).

**2. The Trial Officers' Failure to Find That Plaintiffs Acted with Requisite Intent**

Plaintiffs allege that Defendants breached Article X, Section 2 of the International Constitution by "failing to find that Plaintiffs acted with the requisite intent in allegedly violating said section." ECF No. 1 ¶ 47. As noted above, Article X, Section 2(B) states that "[m]isappropriation, embezzlement, or improper or illegal use of union funds" may be the basis for a charge. ECF No. 11-4 at 114.

In their Opposition, Plaintiffs argue that courts have "universally found that misappropriation, embezzlement, and similarly improper or illegal conduct require an intentional taking of funds for one's personal benefit or gain" and that "they require conduct similar to ***theft, stealing, or larceny***." ECF No. 19 at 20–21 (footnotes omitted). However, the International Constitution contains no such scienter requirement. Indeed, the Court is not convinced that the "improper" use of union funds would require the intentional taking of funds for personal gain: a plain reading of the term "improper"[2] precludes such narrow interpretation. And Plaintiffs have not alleged that the Trial Officers found Plaintiffs only guilty of misappropriation or embezzlement. *See* ECF No. 1 ¶ 37 ("The Trial Officers

---

[2] Improper means "not in accord with propriety, modesty, good manners, or good taste"; "not suited to the circumstances, design, or end"; "not regularly or normally formed or not properly so called"; or "not in accord with fact, truth, or right procedure." *Improper*, Merriam-Webster, https://www.merriam-webster.com/dictionary/improper?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last visited Feb. 10, 2021).

ultimately found Plaintiffs guilty of violating Article X, Section 2(B) of the International Constitution, which prohibits '[m]isappropriation, embezzlement, or improper or illegal use of union funds.'" (brackets in original)); ECF No. 11-16 at 44–45 ("Endo is found guilty of violating Article X, Section 2(B)[.] Nakanelua is found guilty of violating Article X, Section 2(B)[.]"). Further, "absent bad faith or special circumstances, an interpretation of a union constitution by union officials, as well as interpretations of the union's rules and regulations, should not be disturbed by the court." *Local 1052 of United Brotherhood of Carpenters & Joiners v. L.A. Cnty. Dist. Council of Carpenters*, 944 F.2d 610, 613 (9th Cir. 1991) (citation omitted). The Court therefore rejects Plaintiffs' argument that "improper or illegal use of union funds" must also require criminal conduct pursuant to the *ejusdem generis* canon of statutory construction, under which general terms that follow specific terms in a sequence are construed to include only objects similar to the specific objects enumerated. ECF No. 19 at 20 n.10.

While the Court is skeptical that Plaintiffs would be able to prevail on an LMRA claim based on the Trial Officers' failure to apply a scienter requirement that appears nowhere in the International Constitution, it is possible that AFSCME has relevant internal guidance or standards for violations of Article X, Section 2(B) of its Constitution and that the Trial Officers failed to find that Plaintiffs had the requisite intent. The Court therefore dismisses Plaintiffs' claim that Defendants

breached the International Constitution by finding Plaintiffs guilty without finding that they acted with the intent to misappropriate funds for their own gain, but will grant Plaintiffs to leave to amend this portion of their LMRA claim.

**3. The Trial Officers Finding Plaintiffs Guilty of Conduct Not Alleged in the Charging Documents**

Plaintiffs allege that Defendants also breached Article X, Section 2 of the International Constitution by "finding Plaintiffs guilty for conduct that was not alleged in the charging documents." ECF No. 1 ¶ 47. Article X, Section 2 offers a list of behaviors which can form the bases for charges; and appears to be a substantive, rather than procedural, provision. *See* ECF No. 11-4 at 114. It is silent as to whether convictions are limited to allegations contained in the charging documents. *See id.*

In any event, the Court cannot discern a violation of Article X, Section 2 as the Trial Officers convicted Plaintiffs of violating the precise conduct proscribed by Article X, Section 2(B). The Trial Officers found Plaintiffs guilty of violating Article X, Section 2(B), which prohibits "[m]isappropriation, embezzlement, or improper or illegal use of union funds." ECF No. 11-4 at 114. The amended charge against Endo references "[m]isappropriation, embezzlement, improper and illegal use of union funds," ECF No. 11-15 at 1, and the amended charge against Nakanelua alleges the same (without the use of the term "embezzlement"), ECF No. 11-14 at 1. The Court therefore dismisses Plaintiffs' claim that Defendants

violated Article X, Section 2 for convicting Plaintiffs of conduct not alleged in the charging documents, but grants Plaintiffs leave to amend their Complaint so that they can plead facts showing that their convictions violated Article X, Section 2.[3]

**4. Trial Officers Placing the Burden of Proof on Plaintiffs and Denying Plaintiffs the Presumption of Innocence**

Plaintiffs allege that "Defendants breached Article X, Sections 12 and 14 of the International Constitution by improperly placing the burden of proof on Plaintiffs and presuming—based solely on the Final [Report]—that Plaintiffs were guilty." ECF No. 1 ¶ 48. Section 12 guarantees the accused member certain rights; relevant here are the rights "to be presumed innocent unless proven guilty" and "to refuse to testify." ECF No. 11-4 at 119. Section 14 mandates that the accuser is required "[t]o assume the burden of proof." *Id*. at 120. The Court concludes that, by alleging that Defendants placed the burden of proof on Plaintiffs by presuming Plaintiffs were guilty based solely on the Final Report, Plaintiffs have alleged enough of how Defendants violated Article X, Sections 12 and 14.

**5. Due Process Violations**

Finally, Plaintiffs maintain that Defendants violated the International Constitution's Bill of Rights' guarantee of "a fair trial with strict adherence to due

---

[3] If Plaintiffs determine that some other provision of the International Constitution applies, then they can also amend the Complaint to allege a violation of that other section.

process." ECF No. 11-4 at 11. Whereas each of the theories of Plaintiffs' LMRA claim discussed above relate to separate, rather specific, provisions in the International Constitution, the due process theory is based on this broad due process language. And the Court again examines the due process allegations for the elements of a breach of contract claim, including *how* a contract is violated, which must also be supported by facts rather than legal conclusions. *See Iqbal*, 556 U.S. at 678.

In order to determine whether Plaintiffs' due process rights were violated, the Court must first discern what process Plaintiffs were due. The parties disagree as to what source of due process law the Court should consult in order to determine the contours of Plaintiffs' due process rights under the International Constitution. At the hearing, Plaintiffs argued that the Court should apply Hawai‘i law, specifically the Hawai‘i Supreme Court's opinion in *Minton v. Quintal*, 131 Hawai‘i 167, 317 P.3d 1 (2013), which concerned the due process rights of public employees. Defendants, on the other hand, argued at the hearing that the Court should simply examine whether Plaintiffs were given the procedural safeguards required by the LMRDA in order to assess whether Plaintiffs received the due process to which they were entitled under the International Constitution. Neither party identified a case in which a court construed a due process provision in a

union constitution using either of the approaches for which they advocated. Indeed, the Court has not located any such case.

But the Court considers both parties' approaches at least partially correct. In the absence of any guidance on how to construe a right to due process in a union constitution for purposes of an LMRA claim, the Court considers the plain language of the International Constitution. *See Hawaiian Ass'n of Seventh-Day Adventists v. Wong*, 130 Hawai'i 36, 45, 305 P.2d 452, 461 (2013) ("Contract terms are interpreted according to their plain, ordinary, and accepted sense in common speech." (citation omitted)). As the Court stated at the hearing, "due process" is not an easily defined term. However, because the plain meaning of "due process" can be discerned from the traditional understanding of the term found in well-established caselaw, the Court considers those cases. And, as it turns out, that traditional understanding is somewhat consistent with what the LMRDA requires and the holding in *Minton*.

"'(D)ue process is flexible and calls for such procedural protections as the particular situation demands.'" *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (alterations in original) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). The *Mathews* court explained that the Court previously sustained the "validity of procedures by which a federal employee could be dismissed for cause" and that such procedures included "notice of the action sought, a copy of the charge,

reasonable time for filing a written response, . . . an opportunity for an oral appearance," and an evidentiary hearing following dismissal. *Id.* (citing *Arnett v. Kennedy*, 416 U.S. 134, 142–46 (1974)). The Court also observes the general legal principle that due process includes notice and a right to be heard. *See Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (citations omitted). Hawai'i law is in accord. *See Sandy Beach Def. Fund v. City Council of the City & County of Honolulu*, 70 Haw. 361, 378, 773 P.2d 250, 261 (1989); *Minton*, 131 Hawai'i at 189, 317 P.3d at 23.

Plaintiffs' counsel persuasively argued at the hearing that the LMRDA sets a floor, not a ceiling, for rights afforded union members. Indeed, "[a]ny provision of the constitution and bylaws of any labor organization which is inconsistent with the provisions of [29 U.S.C. § 411] shall be of no force or effect." 29 U.S.C. § 411(b). Thus, union members are entitled to all procedural rights contained in the LMRDA *in addition to* any further procedural rights outlined in the union's governing documents. *See Ackley v. W. Conf. of Teamsters*, 958 F.2d 1463, 1477 (9th Cir. 1992) ("Unless union members allege a denial or infringement of a specific right provided them in the LMRDA, it is this federal statutory remedy [Section 301 of the LMRA] that they must pursue when they contend that rights guaranteed them by their union's constitution or by laws have been infringed." (footnote omitted)). Because the International Constitution's guarantee of due process is not otherwise defined, it makes sense that a denial of a "full and fair

hearing" under the LMRDA, 29 U.S.C. § 411(a)(5)(C), would also be a denial of due process under the International Constitution.

Plaintiffs allege Defendants violated their due process rights under the International Constitution in four ways: (1) finding Plaintiffs guilty for conduct that was not alleged in the charging documents; (2) combining multiple hearings officers and six accuseds into one trial proceeding; (3) refusing to provide Plaintiffs with exhibits and other portions of the record following trial; and (4) finding Plaintiffs guilty of conduct not supported by the record. ECF No. 1 ¶ 49.

Based on the Court's review of general due process caselaw as well as LMRDA caselaw, the first, third, and fourth bases constitute sufficient factual allegations that support Plaintiffs' claim that their due process rights were violated. *See Cole v. Arkansas*, 333 U.S. 196, 201 (1948) ("No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge[.]" (citation omitted)); *Kuebler v. Cleveland Lithographers & Photoengravers Union Local 24-P*, 473 F.2d 359, 364 (6th Cir. 1973) (holding that a union member was denied a full and fair hearing under the LMRDA where the union refused to provide the member with the requested record in connection with an internal union appeal); *Int'l Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers v. Hardeman*, 401 U.S. 233, 246 (1971) (citations omitted) (explaining

that "conviction on charges unsupported by any evidence is a denial of due process" under the LMRDA (citations omitted)).  Plaintiffs have therefore provided three factual bases that make their allegation that Defendants violated their right to due process under the International Constitution's Bill of Rights.  The Court therefore denies the Motion with respect to Plaintiffs' due process claim based on the first, third, and fourth bases cited in the Complaint.

With respect to Plaintiffs' claim that Defendants violated their due process rights by combining multiple accuseds and hearings officers into one trial proceeding, nothing in the Complaint indicates that Plaintiffs had a specific right under the International Constitution to a separate trial, nor does due process' plain meaning include such a requirement.  In the absence of any delineated right to a separate trial, the Court is not convinced that consolidating multiple accuseds and hearings officers into a single trial proceeding violates Plaintiffs' due process rights as this procedure did not impinge on Plaintiffs' rights to notice and a hearing.  And, "a union's interpretation of its own rules, regulations, and constitution is entitled to a high degree of deference."  *United Brotherhood of Carpenters & Joiners, Lathers Local 42-L v. United Brotherhood of Carpenters & Joiners*, 73 F.3d 958, 961 (9th Cir. 1996) (citation omitted).  The Court therefore dismisses Plaintiffs' claim that the consolidated trial violated their due process rights.  The Court struggles to envision exactly how Plaintiff could amend this

allegation, but because it is possible that amendment could save this facet of the claim, *see Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003), the Court grants Plaintiffs leave to amend their Complaint to plead facts showing how a consolidated trial impinged on any procedural right Plaintiffs enjoyed under the International Constitution.

**6. Punitive Damages**

Defendants argue Plaintiffs should not be able to recover punitive damages because of the general rule that punitive damages are unavailable for a breach of contract claim under the LMRA. ECF No. 11-1 at 24 (citing *Moore v. Local Union 569 of the IBEW*, 989 F.2d 1534, 1542 (9th Cir. 1993)). However, in *Machado v. Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers*, 454 F. Supp. 2d 1056 (D. Haw. 2006), the court recognized that courts *may* award punitive damages "[i]n very limited circumstances" "'when it would have the effect of changing a specific pattern of illegal conduct.'" *Machado*, 454 F. Supp. 2d at 1065 (quoting *Bower v. Bunker Hill Co.*, 675 F. Supp. 1254, 1259 (E.D. Wash. 1986)). The *Machado* court, however, granted a motion to dismiss punitive damages where the plaintiff failed to allege "a specific pattern of illegal conduct that would be remedied or other unique circumstances that would support an award of punitive damages." *Id.* Here, Plaintiffs have not alleged a specific pattern of illegal conduct. The Court therefore finds that Plaintiffs may not recover punitive

damages under the LMRA. However, the Court grants Plaintiffs leave to amend the Complaint to include facts showing a specific pattern of illegal conduct.

**C. Labor-Management Reporting and Disclosure Act (Count II)**

In Count II, Plaintiffs allege that Defendants violated Section 101(a)(5) of the LMRDA, which provides: "No member of any labor organization may be fined, suspended, expelled or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing." 29 U.S.C. § 411(a)(5). Plaintiffs allege that Defendants disciplined them without providing them with written specific charges or a full and fair hearing.

**1. Standing**

The Court issued an Entering Order asking the parties to address whether Plaintiffs have standing under the LMRDA in light of the Supreme Court's holding that the procedural safeguards in the LMRDA "applies only to suspension of membership in the union" and not "suspension of a member's status as an officer of the union" because "it is rank-and-file union members—not union officers or employees, as such—whom Congress sought to protect." *Finnegan v. Leu*, 456 U.S. 431, 437–38 (1982) (footnote, emphases, internal quotation marks, and citation omitted). As Plaintiffs alleged that Nakanelua was prohibited from

holding any UPW office for four years and Endo was permanently prohibited from the same, ECF No. 1 ¶ 37, the parties agree that Plaintiffs have standing because the LMRDA protects members who are prevented from seeking union office. The Court agrees that Plaintiffs have standing under the LMRDA because they were barred from seeking union office. *See Sullivan v. Laborers' Int'l Union*, 707 F.2d 347, 350 (8th Cir. 1983) ("[B]y preventing one of its members from seeking union office, a union affects the individual as a union member, and thereby triggers the procedural protections contained in section 411(a)(5)." (citations omitted)).

**2. Written Specific Charges**

Plaintiffs allege that Defendants violated the LMRDA by subjecting them to disciplinary action based on charges that were not specific. As explained above, Plaintiffs' counsel stated at the hearing that this claim only relates to the two amended charges, each dated January 21, 2020. Under the LMRDA, disciplinary charges must be "specific enough to inform the plaintiffs, with reasonable particularity, of the details of the alleged violations." *Bise v. IBEW Local 1969*, 618 F.2d 1299, 1306 n.10 (9th Cir. 1979). "[A] union disciplinary charge must include a statement of the facts describing the incident on which the charge is based." *Johnson v. Nat'l Ass'n of Letter Carriers Branch 1100*, 182 F.3d 1071, 1074 (9th Cir. 1999). Courts do not "hold union members to the standards required of a practicing attorney by requiring a highly technical statement of the

facts. . . . The level of detail required is that needed to notify the accused of the incidents that form the basis of the charge so that he or she may prepare a defense." *Id.* at 1074–75 (footnote omitted). Charges that only contain abstract or general allegations but "fail to cite any specific examples" do not comply with the LMRDA. *See id.* at 1075–77. The Court's analysis is limited to the requirements of the LMRDA—even if a union violates its own internal rule, there is no LMRDA violation unless such violation "also contravenes specific prohibitions in the LMRDA." *Wellman v. Int'l Union of Operating Eng'rs*, 812 F.2d 1204, 1206 (9th Cir. 1987) (citations omitted).

The sole statement in the Complaint regarding the lack of detailed charges is: "Defendants violated 29 U.S.C. § 411(a)(5)(A) by subjecting Plaintiffs to disciplinary action based on charges that were not specific." ECF No. 1 at ¶ 54. While the Complaint of course references the relevant amended charges, *see id.* at ¶¶ 27–28, it does not outline *how* the charges were not specific. Plaintiffs' description of the amended charges, *id.*, summarizes the allegations against them, but do not explain what information was missing, if any. The Court therefore dismisses the theory of Count II that avers a violation of 29 U.S.C. § 411(a)(5)(A) and grants leave to amend.

### 3.    Full and Fair Hearing

Plaintiffs allege that Defendants violated their right to a full and fair hearing by (1) finding Plaintiffs guilty of conduct not alleged in the charging documents; (2) combining multiple hearings officers and six accuseds into one trial proceeding; (3) refusing to provide Plaintiffs with exhibits and portions of the record from trial while Plaintiffs were preparing their appeal; (4) finding Plaintiffs guilty of conduct that is not supported by the record; and (5) placing the burden of proof on Plaintiffs.  ECF No. 1 ¶ 55.

While the "full and fair hearing requirement has been compared to 'traditional concepts of due process of law,'" "a union disciplinary hearing need not incorporate the same protections found in criminal proceedings." *Myers v. Affiliated Prop. Craftsmen Local No. 44 of the Int'l All. of Theatrical Stage Emps. & Moving Picture Mach. Operators*, 667 F.2d 817, 820 (9th Cir. 1982) (citations omitted). "'The elements of ... a fair hearing ... generally encompass full notice and a reasonable opportunity to be heard–including the right to present evidence and the right to confront and cross-examine witnesses.'" *Kent v. N.Y. State Pub. Emps. Fed'n*, No. 1:17-CV-0268 (GTS/CFH), 2020 WL 1531020, at *10 (N.D.N.Y. Mar. 31, 2020) (alterations in original) (quoting *Bernstein v. Nolan*, 90-CV-3213, 1990 WL 91728, at *12 (S.D.N.Y. June 28, 1990)).

Plaintiffs allege that the four ways in which they were deprived of a full and fair hearing for their LMRDA claim were also due process violations in violation of the International Constitution for their LMRA claim. *Compare* ECF No. 1 ¶ 49, *with id.* ¶ 55. Because of the overlapping allegations between Counts I and II of the Complaint, the Court's analysis of Plaintiffs' claims here largely dovetails with the Court's analysis of Plaintiffs' due process claims in Count I.

**a. The Trial Officers Finding Plaintiffs Guilty for Conduct Not in the Charging Documents**

First, Plaintiffs assert that they were found guilty of conduct that was not alleged in the charging documents. Because the LMRDA guarantees that union members receive "'full notice'" of the charges against them, *Kent*, 2020 WL 1531020, at *10 (citation omitted), Plaintiffs' allegation that they were not afforded due process under the LMRDA because they were found guilty based on allegations that differed from those in the charging documents suffices. The Court therefore denies the Motion with respect to this claim.

**b. Combining Multiple Hearings Officers and Six Accuseds into One Trial Proceeding**

Second, Plaintiffs allege they were denied a full and fair hearing because Defendants combined multiple hearings officers and six accuseds into one trial proceeding. Plaintiffs fail to show that the consolidation of the various disciplinary proceedings impinged in any way on the rights to which Plaintiffs were entitled

under the LMRDA, namely the rights to "'full notice and a reasonable opportunity to be heard–including the right to present evidence and the right to confront and cross-examine witnesses.'" *Kent*, 2020 WL 1531020, at *10 (citation omitted). The Court therefore dismisses this portion of Plaintiffs' LMRDA claim. Because leave to amend must be liberally granted, *see Eminence Cap., LLC*, 316 F.3d at 1052, the Court grants leave to amend here.

**c. Defendants' Failure to Provide Plaintiffs with the Trial Exhibits or Other Portions of the Record**

Third, Plaintiffs claim they were denied a full and fair hearing because Defendants refused to provide them with copies of the trial exhibits and other portions of the record while they were preparing their appeal. As noted above, the Sixth Circuit held in *Kuebler* that a union violates a union member's right to a full and fair hearing under the LMRDA when the union denies the union member's request for the record from the trial and thereby denies the union member the "opportunity for an effective appeal." 473 F.2d at 364. Plaintiffs therefore state a claim under the LMRDA for Defendants' refusal to provide them with the record following trial.

**d. The Trial Officers Finding Plaintiffs Guilty of Conduct Not Supported by the Record**

Fourth, Plaintiffs allege that their due process rights were violated when the Trial Officers found Plaintiffs guilty of conduct not supported by the record. As

previously stated, "conviction on charges unsupported by any evidence is a denial of due process." *Hardeman*, 401 U.S. at 246 (citations omitted). Plaintiffs therefore state a claim under the LMRDA for Defendants' finding Plaintiffs guilty of conduct not supported by the record.

**e. Defendants Placed the Burden of Proof on Plaintiffs**

Finally, Plaintiffs alleged that they were denied a full and fair hearing because Defendants "improperly plac[ed] the burden of proof on Plaintiffs" at trial. ECF No. 1 ¶ 55. Plaintiffs included this allegation in their LMRA claim as a direct violation of the International Constitution, but did not allege that it was a separate due process violation. The Court agrees that if Plaintiffs bore the burden of proof, Plaintiffs would have been denied a full and fair hearing because the burden of proof—while not very high—rests with the union. *See Georgopoulos v. Int'l Brotherhood of Teamsters*, 942 F. Supp. 883, 895 (S.D.N.Y. 1996) ("The burden of proof regarding disciplinary charges against a union member is low—the charging party 'must provide only some evidence at the disciplinary hearing to support the charges made.'" (some internal quotation marks omitted) (quoting *Hardeman*, 401 U.S. at 245–46)), *aff'd*, 116 F.3d 1472 (table), 1997 WL 355346 (2d Cir. June 27, 1997). The Court therefore denies the Motion with regard to this theory.

**4. Punitive Damages**

Defendants argue that Plaintiffs should not be able to recover punitive damages under their LMRDA claim. ECF No. 11-1 at 29. Punitive damages are only available under the LMRDA "where the plaintiff can establish actual malice or reckless or wanton indifferent to his rights." *Bise*, 618 F.2d at 1305. Here, Plaintiffs alleged that Defendants acted with "malice or reckless or wanton disregard of Plaintiffs' rights[.]" ECF No. 1 ¶ 56. In *Maurer v. IBEW, Local 569*, 219 F. Supp. 3d 1017 (S.D. Cal. 2016), the court held that the "conclusory assertion" that the defendants "acted with malice or with conscious disregard for Plaintiff's rights" "is enough to survive federal pleading standards." *Maurer*, 219 F. Supp. 3d at 1027 (internal quotation marks and citations omitted). The Court therefore denies the Motion with respect to Plaintiffs' prayer for punitive damages under their LMRDA claim.

**D. Conversion (Count III)**

In Count III, Endo asserts a conversion claim against UPW for its refusal to release various personal belongings to her that she had left in UPW's office. Under Hawai'i law, the elements of conversion are: "'(1) A taking from the owner without his consent; (2) an unwarranted assumption of ownership; (3) an illegal use or abuse of the chattel; and (4) a wrongful detention after demand.'" *Tsuru v. Bayer*, 25 Haw. 693, 696 (Haw. Terr. 1920) (citation omitted); *see also*

*Jass v. CherryRoad Techs., Inc.*, 472 F. Supp. 3d 787, 796 (D. Haw. 2020) (same). "'[T]he defendant's knowledge, intent, motive, mistake, and good faith are generally irrelevant' to a conversion claim"—conversion takes place when the defendant "'intends to deal with the property in a way which is in fact inconsistent with the plaintiff's right.'" *Yoneji v. Yoneji*, 136 Hawai'i 11, 16, 354 P.3d 1160, 1165 (App. 2015) (quoting *Freddy Nobriga Enters., Inc. v. State, Dep't of Hawaiian Home Lands*, 129 Hawai'i 123, 130, 295 P.3d 993, 1000 (App. 2013)).[4]

Endo pled sufficient facts in the Complaint to state a claim for conversion. In satisfying the first two elements, Endo alleges that UPW gathered various personal items of hers that she left in the UPW office and has stated its intention to continue exercising dominion and ownership of these items unless Endo can prove she purchased them using personal funds or until a review and investigation into UPW's financial transactions is completed. ECF No. 1 ¶ 63. And under *Tsuru*, "[a]ny distinct act of dominion wrongfully exerted over one's property in denial of his right, or inconsistent with it, is a conversion," and that "it is equally a

---

[4] In the Motion, Defendants cite dicta from *Brooks v. Dana Nance & Co.*, 113 Hawai'i 406, 153 P.3d 1091 (2007), in which the court stated that conversion requires a "constructive or actual intent to injure" the defendant's interest in property. ECF No. 11-1 at 30 (quoting *Brooks*, 113 Hawai'i at 415, 153 P.3d at 1100). In light of the longstanding caselaw discussed in *Yoneji*, the *Brooks* court's statement does not affect the Court's analysis of Endo's conversion claim as it is clear that conversion—an intentional tort—does indeed require an intentional act, but does not require any particular mindset on the part of the defendant.

conversion if [a defendant] takes [the property] for a temporary purpose only, if in disregard of the plaintiff's right." *Tsuru*, 25 Haw. at 696 (internal quotation marks and citation omitted). UPW's continued exercise of dominion over Endo's belongings thus satisfies the third element. UPW has continued to withhold Endo's belongings despite Endo and her counsel's efforts to have the items returned, which satisfies the fourth element. *Id.* ¶¶ 60–63.

Defendants argue that the conversion claim fails because Plaintiffs only gave a general description of the items being held by UPW and failed to demonstrate Endo's ownership of each item, and that such items "could as well be UPW property." ECF No. 11-1 at 30–31. The Court disagrees. On a motion to dismiss, it is sufficient that Plaintiffs alleged she owns the items that UPW is withholding from her. Whether Endo indeed owns the items in question is thus a question of fact; Endo need not establish ownership in order to defeat a motion to dismiss.

The Court therefore denies the Motion as to Count III.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion to Dismiss Complaint.

The Motion is DENIED with respect to the portions of Count I that assert: (1) a breach of Article X, Section 6 of the International Constitution for a lack of specificity in the charges amended on January 21, 2020; (2) a breach of Article X,

Sections 12 and 14 of the International Constitution by improperly placing the burden of proof on Plaintiffs; and (3) a breach of the International Constitution's guarantee of due process under its Bill of Rights by (a) finding Plaintiffs guilty of conduct not alleged in the January 21, 2020 amended charges, (b) not providing Plaintiffs with the proper record for their appeal, and (c) finding Plaintiffs guilty of conduct not supported by the record. The Motion is GRANTED and claims DISMISSED with respect to the portions of Count I that assert: (1) a breach of Article X, Section 2(B) of the International Constitution by failing to find that Plaintiffs acted with the requisite intent; (2) a breach of Article X, Section 2 of the International Constitution by finding Plaintiffs guilty of conduct not alleged in the January 21, 2020 amended charges; (3) a breach of the International Constitution's guarantee of due process under its Bill of Rights by holding a consolidated hearing before multiple hearings officers; and (4) punitive damages.

The Motion is DENIED with respect to the portions of Count II that assert: (1) the denial of a full and fair hearing under the LMRDA by (a) finding Plaintiffs guilty of conduct not alleged in the January 21, 2020 amended charges, (b) not providing Plaintiffs with the proper record for their appeal, (c) holding Plaintiffs guilty of conduct not supported by the record, and (d) placing the burden of proof on Plaintiffs at the trial; and (2) punitive damages. The Motion is GRANTED and claims DISMISSED with respect to the portions of Count II that assert: (1) a

violation of the LMRDA by subjecting Plaintiffs to a disciplinary action based on charges that were not specific; and (2) the denial of a full and fair hearing under the LMRDA by holding a consolidated hearing before multiple hearings officers.

The Motion is DENIED as to Count III.

Leave to amend is GRANTED as to all aspects of Counts I and II that are dismissed.

Plaintiffs have until March 12, 2021 to file an amended complaint. Plaintiffs may not add parties or claims without obtaining leave of court.

IT IS SO ORDERED.

DATED: Honolulu, Hawai‘i, February 10, 2021.

UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

Jill A. Otake
United States District Judge

Civil No. 20-00442-JAO-KJM, *Dayton Nakanelua, et al. v. United Public Workers, AFSCME Local 646, AFL-CIO, et al.*; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS UNITED PUBLIC WORKERS, AFSCME LOCAL 646, AFL-CIO AND AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES’ MOTION TO DISMISS AND REQUEST FOR JUDICIAL NOTICE

41