IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DAYTON NAKANELUA, JEANNE ENDO,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED PUBLIC WORKERS, AFSCME, LOCAL 646, AFL-CIO, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES,<br><br>Defendants. | CIVIL NO. 20-00442 JAO-KJM<br><br><br>**ORDER DENYING PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY FOR COUNTS I AND II OF THE COMPLAINT** |

**ORDER DENYING PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY FOR COUNTS I AND II OF THE COMPLAINT**

Plaintiffs Dayton Nakanelua ("Nakanelua") and Jeanne Endo ("Endo")

(collectively, "Plaintiffs") bring this Labor Management Relations Act ("LMRA")

(Count I), Labor-Management Reporting and Disclosure Act ("LMRDA") (Count

II), and conversion (Count III) action against Defendants the United Public

Workers, AFSCME, Local 646, AFL-CIO ("UPW") and its parent organization,

1

the American Federation of State, County and Municipal Workers ("AFSCME") (collectively, "Defendants").[1]

Nakanelua is the former State Director and Endo is the former Administrator of Fiscal and Membership Services ("FMS Administrator") of UPW.  In March 2020, they faced trial before the AFSCME Judicial Panel for alleged violations of Defendants' Constitutions and policies.  The Judicial Panel found them guilty and removed Nakanelua from office and terminated Endo from employment with UPW.

Plaintiffs now move for partial summary judgment on liability for Counts I and II only.  *See* ECF No. 55 ("Motion" or "Motion for Summary Judgment"). They argue that the Judicial Panel found them guilty of conduct for which they were not charged in violation of the LMRDA's full and fair hearing provision and the AFSCME Constitution's guarantee of due process.  They also assert that the charges they face were not sufficiently specific under the requirements of the AFSCME Constitution.

For the following reasons, the Court concludes that there are material issues of disputed fact that preclude summary judgment.  The Court thus DENIES Plaintiffs' Motion.

---

[1]  Endo alone asserts Count III against UPW.

# I.    BACKGROUND

## A.    Facts

Unless otherwise indicated, the following facts are undisputed.

UPW is a labor union that represents approximately 13,000 members across the State of Hawaiʻi, most of whom are state, county, and city employees.  ECF No. 1 ¶ 7; ECF No. 44 ¶ 4.  AFSCME is an international labor union and is UPW's parent organization.  *See* ECF No. 56 ¶¶ 1–2; ECF No. 63 ¶¶ 1–2.  UPW is governed by its Constitution, which does not contain any substantive provisions governing discipline or charges.  ECF No. 56 ¶ 3; ECF No. 63 ¶ 3.  Instead, the UPW Constitution incorporates by reference the AFSCME Constitution.   ECF No. 56 ¶ 3; ECF No. 63 ¶ 3.

As relevant to the instant proceedings, the AFSCME Constitution contains a Bill of Rights for Members, which states that "[c]harges against a member or officer shall be specific and shall be only on grounds provided in this Constitution. Accused members or officers shall have the right to a fair trial with strict adherence to due process."  ECF No. 56-4 at 6); *see* ECF No. 56 ¶ 4.  Additionally, Article X — which relates to Judicial Procedure — Section 6 provides:

> Charges shall be in writing and shall be signed by the member or members bringing the charges.  The charges shall be specific, citing in detail the nature, the date, and the circumstances of the alleged offense and, where a violation of a constitutional provision is alleged, the specific Section shall be

3

cited, along with the specific act or failure to act which constitutes the alleged violation.

ECF No. 56-4 at 12; *see* ECF No. 56 ¶ 5.

Nakanelua assumed the position of State Director of UPW in 2004. ECF No. 1 ¶ 9; ECF No. 44 ¶ 4. Endo was appointed as UPW's FMS Administrator in 2004. ECF No. 1 ¶ 12; ECF No. 44 ¶ 7. As the FMS Administrator, Endo was also UPW's sole procurement officer; managed UPW's computer and communications systems; managed UPW's Human Resources department; served as food and beverage coordinator, special events coordinator, and mailing coordinator; and was responsible for coordinating the repairs and maintenance of UPW's offices across the State. ECF No. 1 ¶ 13; ECF No. 44 ¶ 7.

Beginning in April 2019, Alton Nosaka ("Nosaka"), the Vice President of the UPW Division for Hawaiʻi Island, filed a series of charges against Plaintiffs. ECF No. 56-11. First, Nosaka filed charges against Endo, alleging that she misused "the Corporate Hawaiian Miles Points for personal gain without proper approval." ECF No. 56 ¶ 6. A few weeks later, the first charge against Nakanelua alleged that he had misappropriated funds and failed to obtain approval for using the funds of the UPW's political action committee ("PAC"). ECF No. 56 ¶ 9. In a second charging document directed to Nakanelua, Nosaka accused Nakanelua of submitting hours of work when he was in fact at home. *Id.* ¶ 12. The third charge against Nakanelua alleged that he had sent too many UPW staff to the AFSCME

4

convention and that Nakanelua had hired two law firms without proper authorization.  *Id.* ¶ 14.

After this first round of charges, AFSCME's president determined an audit of UPW's financial books and records was appropriate before the charges could be considered further since "[a]ll charges generally allege financial mismanagement and improper or unauthorized expenditures."  ECF No. 63 ¶ 53; *see* ECF No. 72 ¶ 53.  The audit took place in August 2019 and the auditors produced a draft report that identified "significant deficiencies in the accounting procedures" and "serious failings in accountability in the expenditure of [UPW's] funds."  ECF No. 63 ¶¶ 55–56.  Plaintiffs received the draft report and submitted a 14-page response detailing Nakanelua's "corrections and clarifications."  *Id.* ¶ 57; *see* ECF No. 63-14 at 34.  On December 19, 2019, the auditor — Selma Golding — replied to Nakanelua's response to inform him that she would not be changing the draft and to provide him a copy of the final audit report ("Final Report").  ECF No. 63 ¶ 58; ECF No. 63-14 at 50–51.  In addition to the Final Report, the auditor explained to Nakanelua in the cover letter that "[i]n situations where receipts could not be provided you included a document titled 'Certification' where the signer certified the purchase, reimbursement and/or credit card charge was a valid union expenditure.  All these 'Certifications' were dated after our visit and cannot be treated as adequate support documentation."  ECF No. 63-14 at 50.

On January 21, 2020, Nosaka filed amended charges against Nakanelua and Endo.  ECF No. 63 ¶ 60.  Both amended charging documents state:  "Based on the AFSCME Final Audit report dated December 19, 2019 . . . amended charges are as follows[.]"  *See* ECF No. 56-9 (Nakanelua); ECF No. 56-12 (Endo).  Nosaka charged Nakanelua with:

> (1) misusing union funds for Thanksgiving and Christmas luncheons without authorization;
>
> (2) submitting "certification" documents as receipts for illegal reimbursements; and
>
> (3) violating the UPW Constitution and the Financial Standards Code.

ECF No. 56-9; ECF No. 56 ¶ 17.  As to Endo, Nosaka charged her with six offenses:

> (1) misappropriation for using personal credit cards to gain points;
>
> (2) paying for gift cards and Christmas luncheons without proper authorization;
>
> (3) submitting false financial reports;
>
> (4) providing "certification" documents as receipts for illegal reimbursements;
>
> (5) giving away gift cards to former State Executive Board members without proper approval; and
>
> (6) receiving per diem payments without the required overnight stay.

ECF No. 56-12; ECF No. 56 ¶ 21.

Ahead of trial before the Judicial Panel, both Plaintiffs submitted written answers to the charges.  ECF No. 63 ¶ 61.  In their written answers, Plaintiffs cited

and responded to allegations of misconduct described in the Final Report. *See* ECF No. 63-14 at 99–107 (Nakanelua); ECF No. 63-15 at 18–45 (Endo). For example, Nakanelua provided "[i]n response to the above-cited finding of the Final [Report]," an explanation about his use of certifications in lieu of receipts. ECF No. 63-14 at 100. Likewise, Endo included in her written answers "a full and complete response to 19 of 20 bullets directly affecting [her] in the [Final Report]." ECF No. 63-15 at 23.

Trial occurred on March 5 and 6, 2020 and the Judicial Panel released its decision on April 30, 2020 ("Decision"). ECF No. 63 ¶¶ 66–67; ECF No. 56-10. As to Endo, the Decision dismissed the charges laid out in the first charging document that she misused the Corporate Hawaiian Miles Points for personal gain. ECF No. 56 ¶ 8; ECF No. 56-10 at 39. As to Nakanelua, the Judicial Panel either dismissed or only issued a reprimand on the charges set forth in the first round of charging documents. *See* ECF No. 56 ¶¶ 11, 13, 15–16; ECF No. 56-10.

But the Judicial Panel found both Plaintiffs guilty for some conduct. *See id.* ¶¶ 24–27. The parties dispute whether that conduct was alleged in the January 2020 amended charging documents. *See id.* ¶ 28; ECF No. 63 ¶ 28. First, the Judicial Panel found Endo guilty of:

> [V]iolating Article X, Section 2(B) of the International Constitution for her wholesale failure to manage UPW's finances, including her mishandling of cash (shown by the failure to account for cash related to a canceled event); inability to

> maintain and file receipts and prepare expense reports on a timely basis in conformance with the Financial Standards Code; paying credit card bills without adequate documentation; neglecting to maintain an inventory for UPW property including gift cards and office equipment; not maintaining leave records; failing to reconcile bank accounts on a timely basis; and obtaining reimbursement for her own expenses before State Director Nakanelua approved them.

ECF No. 56-10 at 44.  As punishment, the Judicial Panel terminated Endo's employment with UPW and prohibited her from "holding any office or position with UPW or any other affiliate of AFSCME at any time."  *Id.*

The Judicial Panel also found Nakanelua guilty of violating Article X, Section 2(B) of the AFSCME Constitution.  *Id.* at 44–45.  The Decision noted Nakanelua's "overall failure to exercise his fiduciary responsibility over UPW's finances, including for submitting expenses and obtaining reimbursement without adequate documentation, and counter-signing the $165,603 check for a documentary film without approval."  *Id.*  Additionally, the Decision describes how "[t]he audit team identified thousands of dollars in his expenses that were paid when documentation was missing.  This violates Article X, Section 2(B).  Belated certifications do not overcome these shortcomings."  *Id.* at 40.  The Judicial Panel removed Nakanelua from office and prohibited him from "holding office at any level of the Union for a period of four years."  *Id.* at 45.

**B.     Procedural History**

As stated above, Plaintiffs brought suit based on three claims:  Count I for violation of the LMRA; Count II for violation of the LMRDA; and Count III for conversion.  *See generally* ECF No. 1.  On November 25, 2020, Defendants moved to dismiss the Complaint in its entirety, *see* ECF No. 11, and Plaintiffs opposed, ECF No. 19.

The Court granted in part and denied in part the motion to dismiss.  ECF No. 28.  The Court granted leave to amend on the claims that were dismissed.  *Id.* at 41.  Plaintiffs did not amend their Complaint and Defendants answered.  ECF No. 44.

Plaintiffs now move for partial summary judgment as to liability on certain portions of Counts I and II that remain live after this Court's Order on the motion to dismiss.  ECF No. 55.  Defendants oppose and ask the Court to enter summary judgment in its favor.  ECF No. 64.[2]

---

[2]  Defendants do not *move* for summary judgment in their opposition, but instead request the Court enter judgment in their favor.  *See* ECF No. 64 at 9, 18.  Defendants cite Rule 56.1(j) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules"), but the correct provision is Local Rule 56.1(i), which provides:

> If a party moves for summary judgment and the record establishes as a matter of law that another party is entitled to summary judgment against the movant, the court, in the court's discretion, may enter summary judgment against the movant

(continued . . .)

## II.   LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party. *See State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir. 1989) (per curiam).

Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See T.W. Elec.*, 809 F.2d at 630; Fed. R. Civ. P. 56(c). The opposing party may not defeat a motion for

---

(continued . . .)

after providing that party with oral or written notice and an opportunity to be heard.

LR56.1(i). Presumably Defendants' request only applies to Counts I and II because they do not discuss Count III in their opposition to Plaintiffs' Motion.

10

summary judgment in the absence of any significant probative evidence tending to support its legal theory. *See Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The nonmoving party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec.*, 809 F.2d at 630; *Blue Ocean Pres. Soc'y v. Watkins*, 754 F. Supp. 1450, 1455 (D. Haw. 1991).

If the nonmoving party fails to assert specific facts, beyond the mere allegations or denials in its response, summary judgment, if appropriate, shall be entered. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990); Fed. R. Civ. P. 56(e). There is no genuine issue of fact if the opposing party fails to offer evidence sufficient to establish the existence of an element essential to that party's case. *See Celotex*, 477 U.S. at 322; *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994); *Blue Ocean*, 754 F. Supp. at 1455.

In considering a motion for summary judgment, "the court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec.*, 809 F.2d at 631 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986)) (footnote omitted). Inferences must be drawn in favor of the nonmoving party. *See id.* However, when the opposing party offers no direct evidence of a

material fact, inferences may be drawn only if they are reasonable in light of the other undisputed background or contextual facts and if they are permissible under the governing substantive law. *See id.* at 631-32. If the factual context makes the opposing party's claim implausible, that party must come forward with more persuasive evidence than otherwise necessary to show there is a genuine issue for trial. *See Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994) (citing *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied*, 484 U.S. 1006 (1988)).

## III.   DISCUSSION

The thrust of Plaintiffs' partial Motion for Summary Judgment is that Defendants failed to sufficiently specify the charges against Plaintiffs and that Defendants found Plaintiffs guilty of uncharged conduct. While the charging documents are somewhat unclear and there are indications that Plaintiffs may have suffered sanctions based on uncharged conduct, the Court concludes that Plaintiffs have not established that Defendants violated the LMRA or LMRDA as a matter of law. A reasonable jury could conclude that Plaintiffs were on notice of the charges they faced and that the Judicial Panel found them guilty only of charged conduct. Therefore, the Court denies Plaintiffs' Motion.

Plaintiffs limit their Motion to two theories of liability on Counts I and II: (1) that Defendants found Plaintiffs guilty of conduct not alleged in the charging

documents in violation of both the LMRA and LMRDA; and (2) that Defendants'
charges against Plaintiffs were not sufficiently specific under Article X, Section 6
of the AFSCME Constitution in violation of the LMRA.  *See* ECF No. 55 at 1–2.

Defendants first respond that Plaintiffs lack standing to assert the LMRA
and LMRDA claims, arguing that Endo was no longer a union member at the time
of the Decision, and that Plaintiffs were charged in their capacities as union
officials or staff rather than as union members.  *See generally* ECF No. 64 at 18–
22.  Defendants alternatively assert that Plaintiffs' uncharged conduct and
specificity theories fail as a matter of law because the charging documents
incorporated the Final Report, which provided sufficient detail to the accused.  *See
generally id.* at 22–33.  Instead of requesting mere denial of Plaintiffs' Motion,
Defendants ask the Court to exercise its discretion under Local Rule 56.1(i) and
grant summary judgment to Defendants.

The Court addresses each argument in turn and concludes that summary
judgment is not appropriate for either party on the current record.

## A.    Standing

### 1.    Endo's Standing to Assert the LMRDA Claim

Defendants challenge Endo's standing to prosecute her LMRDA claim
because she had not paid her April 2020 membership dues when the Judicial Panel
issued its Decision.  *See* ECF No. 64 at 19–20.  Thus, Defendants claim Endo was

not a member of the union at the time of the alleged violation and no longer

protected under the LMRDA.  *Id.* at 20.  But Defendants already conceded in their

answer that "[a]t all relevant times, Plaintiffs were members of AFSCME and/or

UPW."  ECF No. 1 ¶ 17; ECF No. 44 ¶ 7.  This admission is binding on

Defendants and establishes Plaintiffs' standing.  *See Am. Title Ins. Co. v. Lacelaw*

*Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings . . . ,

unless amended, are considered judicial admissions conclusively binding on the

party who made them." (citing *White v. Arco/Polymers, Inc.*, 720 F.2d 1391, 1396

(5th Cir. 1983)) (other citation omitted)).[3]

### 2.    Plaintiffs' Standing to Assert the LMRA Claim

Defendants also challenge both Plaintiffs' standing under the LMRA.

Defendants argue that because Nakanelua was charged as a "local union officer,"

and Endo was charged as "local union staff," they are not entitled to the protections

//

//

---

[3]  Even if Defendants had not conceded, the Court concludes that Endo has sufficiently demonstrated standing at this stage of the proceedings.  The parties do not dispute Endo was current on her dues before and at the time of the union trial in March 2020, which she asserts is the relevant time frame for her alleged injury.  ECF No. 63 ¶ 47; ECF No. 72 ¶ 47.  Further, Endo presented evidence that she was not yet late on her April dues at the time of the Decision, and that she would have paid her April dues if she had not been terminated.  *See* ECF No. 72 ¶¶ 45–49.

in the Bill of Rights for Union Members.  *See* ECF No. 64 at 20.[4]  This line of argument lacks support, and therefore fails.

Nothing in the charging documents state that Plaintiffs were being charged in some limited capacity.  *See, e.g.*, ECF No. 56-9 (Nakanelua); ECF No. 56-12 (Endo).  The charging documents list Plaintiffs' positions with the union, but that alone is insufficient to suggest that their status as members was irrelevant to the charges.

More crucially, Defendants cite no authority for the proposition that the capacity of the accused is relevant to the applicability of the Bill of Rights.  Although unclear, Defendants appear to rely on the fact that the group of provisions is titled, "Bill of Rights for Union *Members*."  ECF No. 56-4 at 5 (emphasis added).  But they cite no cases or evidence for their premise.  Moreover, the Bill of Rights expressly states:  "Charges against a member *or officer* shall be specific and shall be only on grounds provided in this Constitution. Accused members *or officers* shall have the right to a fair trial with strict adherence to due process.  The accused shall be considered innocent until proven guilty."  ECF No.

---

[4]  Defendants also challenge Endo's standing based on her purported withdrawal from the union.  The Court rejects that argument for the reasons articulated in the LMRDA standing section.

56-4 at 6 (emphases added).  Without more, Defendants' challenge to Plaintiffs' standing fails.

## B.   Charging Documents Incorporate the Final Report

Before turning to the merits of Plaintiffs' arguments, the Court must determine the universe of charged conduct.  Plaintiffs argue that the Court must limit itself to the four corners of the charging documents, while Defendants assert that the Court should consider the Final Report as part of the charges because the charging documents incorporate it by reference.  *See* ECF No. 71 at 9–11; ECF No. 64 at 22–25.  The Court holds that because (1) the amended charging documents state that they are "based on" the Final Report, and (2) there is evidence that Plaintiffs treated the Final Report as a description of the charges, the charging documents incorporated the Final Report.

To start, both parties recognize the lack of LMRA cases that address whether documents referred to in charging documents can form the factual bases of the charges.  *See* ECF No. 64 at 24; ECF No. 71 at 15–16 & n.4.  In the absence of precise precedent, the Court observes that "'[d]ue process is flexible and calls for such procedural protections as the particular situation demands.'"  *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  Further, while the Court has previously noted that LMRDA and LMRA specificity standards are not necessarily identical, *compare* ECF No. 28 at

16

19, *with id.* at 32 (denying motion to dismiss as to specificity under the LMRA while granting motion to dismiss as to specificity under the LMRDA), the Court finds that LMRDA cases discussing the issue are still relevant, *see id.* at 26–27.  A review of that case law, and a consideration of general principles of due process, dictate that notice to the accused of the charges they face is the touchpoint inquiry and informs whether the Court should consider the Final Report.  *See id.* at 27.

As relevant here, Section 101(a)(5) of the LMRDA provides:  "No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges[.]" 29 U.S.C. § 411(a)(5).  In deciding whether a union has violated the written specific charges provision, the Ninth Circuit has emphasized that notice to the accused is the aim of the statute.  *See Johnson v. Nat'l Ass'n of Letter Carriers Branch 1100*, 182 F.3d 1071, 1074 (9th Cir. 1999).  Courts do not "hold union members to the standards required of a practicing attorney by requiring a highly technical statement of the facts. . . .  The level of detail required is that needed to notify the accused of the incidents that form the basis of the charge so that he or she may prepare a defense."  *Id.* at 1074–75 (footnote omitted).

While the charging documents are of course the starting point for the Court's inquiry, other courts have considered additional sources of information in

17

determining whether the accused received sufficient notice.  For example, in *Chao v. Local 1357, IBEW*, 232 F. Supp. 2d 1119, 1129 (D. Haw. 2002), District Judge Mollway rejected the Secretary of Labor's argument that a charging document must be viewed in isolation to determine whether it met the specificity requirement in the LMRDA.  While the at-issue charging letter standing alone would have been enough, Judge Mollway nonetheless held that the letter incorporated an independent auditor's report because the letter "specifically mention[ed] the . . . report as the basis for the charges" and was available to the accused to review.  *Id*. The incorporation of the auditor's report thus bolstered the charging letter for the purposes of the specificity inquiry.

Likewise, in *Harris v. Plasterers Local No. 406*, 619 F.2d 1164, 1168 (7th Cir. 1980), the Seventh Circuit considered circumstances outside the charging documents in reversing the district court's holding that a union's charging documents were so deficient that the accused union members were not required to exhaust internal remedies before filing a lawsuit.  *Id.*  In so doing, the Seventh Circuit observed the plaintiffs were on notice of the charges based on obvious circumstances.  While the court noted that there were clearly questions about the specificity of the charges under the LMRDA, it nonetheless looked outside the charging documents to inform its decision.

18

Here, the Court sees no valid reason to ignore the Final Report and limit itself to the four corners of the charging documents when the charging documents themselves expressly rely on the Final Report.  On January 21, 2020, Nosaka filed amended charges against both Nakanelua and Endo.  Both amended charging documents state:  "Based on the AFSCME Final Audit report dated December 19, 2019 . . . amended charges are as follows[.]"  *See* ECF No. 56-9 (Nakanelua); ECF No. 56-12 (Endo).  Thus, like the charging letter in *Chao*, the amended charging documents here "specifically mention[] the [Final Report] as the basis for the charges."  *Chao*, 232 F. Supp. 2d at 1129.  The Court concludes that the charging documents therefore incorporated the Final Report.

Further, Plaintiffs had full access to the Final Report, resulting in the reasonable inference (at this stage) that they had notice of the charges.  It is undisputed that Plaintiffs reviewed and commented on the draft audit report, and that the Final Report did not make any changes based on those comments.  *See* ECF No. 63 ¶¶ 57–58; ECF No. 72 ¶¶ 57–58; ECF No. 63-14 at 50.  Moreover, there is some indication in the record that the Final Report informed Plaintiffs' trial strategy ahead of the union hearing.  *See* ECF No. 63 ¶¶ 62–63; ECF No. 72 ¶¶ 62–63.  In fact, both Plaintiffs referenced the Final Report in detail in their written answers to the charges ahead of trial.

19

None of Plaintiffs' arguments opposing incorporation are persuasive.  First, Plaintiffs characterize the amended charging documents as merely mentioning the Final Report, but the plain language shows that the charges were "based on" the Final Report.  While "based on" is just a short two-word phrase, its meaning is clear — the Final Report provided the factual basis for the amended charges.  Plaintiffs' citations to contract law incorporation by reference cases are inapposite. *See* ECF No. 71 at 11 (citing *Tuttle v. Front St. Affordable Hous. Partners*, 478 F. Supp. 3d 1030, 1045 (D. Haw. 2020); *Diamond Resort Haw. Corp. v. Bay W. Kailua Bay, LLC*, Cv. No. 10-00117 DAE-LEK, 2011 WL 776106, at *6 (D. Haw. Feb. 25, 2011)).  Charging documents are not contracts between parties that need to understand the precise terms of their meetings of their minds.  Rather, charging documents are meant to put an accused on notice so that he or she may present a defense.  *See Johnson*, 182 F.3d at 1074; *see also United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 385 (2d Cir. 2001) ("Not all of the due process protections available in the federal courts apply to union disciplinary proceedings. Such proceedings need only adhere to the basic principles of due process." (citations and internal quotation marks omitted)).  Thus, the LMRDA cases that Defendant cites are a closer analog to the instant situation and suggest a looser standard.  ECF No. 64 at 15–16.

20

Next, Plaintiffs attempt to distinguish *Chao*.  Plaintiffs highlight that *Chao* is an LMRDA specificity case and that Plaintiffs have an LMRA claim in addition to their LMRDA claim.  As noted above, LMRDA cases can inform the Court's inquiry, especially in the absence of LMRA precedent.  Moreover, Plaintiffs cite no cases that even suggest that incorporation by reference would be different in the LMRA context.  Plaintiffs simply state that the standard is different "because a specificity claim under the LMRA is based upon language contained in the AFSCME Constitution, which provides detailed requirements as to what must be included in the charging document."  ECF No. 71 at 12.  But the AFSCME Constitution does not prohibit incorporation by reference or even use the term "charging document" in the operative section.  *See* ECF No. 56-4 at 6, 12.  Therefore, the AFSCME Constitution provides no support as to the incorporation issue.

Plaintiffs also unsuccessfully attempt to distinguish *Chao* on its facts.  They argue that the independent report in *Chao* was narrower than the Final Report and that the charging letter in *Chao* was more detailed than the amended charging documents.  ECF No. 71 at 8–9.  But Plaintiffs do not explain why such distinctions matter.  Indeed, incorporation here would seem to make even more sense to bolster the less-detailed charging documents.  And in any event, *Chao* does not extensively quote either the auditor's report or the charging letter in that

case, suggesting that their contents did not affect the court's decision to the extent Plaintiffs claim.

Thus, for the foregoing reasons, the Court concludes that the amended charging documents incorporated the Final Report by reference.  But as the Court's conclusion does not necessarily dispose of Plaintiffs' Motion on either ground, the Court now addresses whether the supplemented charging documents provided sufficient specificity and charged all the conduct for which the union found Plaintiffs guilty.

## C.    Uncharged Conduct

Plaintiffs move for summary judgment on the ground that the Judicial Panel found them guilty of conduct for which they were not charged in violation of (1) the LMRA because the AFSCME Constitution's Bill of Rights' guarantees "a fair trial with strict adherence to due process," ECF No. 55-1 at 8 (quoting AFSCME Constitution) (emphasis omitted); and (2) the LMRDA because it requires that accused members be "afforded a full and fair hearing."  ECF No. 55-1 at 16 (quoting 29 U.S.C. § 411(5)).  The Court held in its motion to dismiss Order that a guilty finding as to uncharged conduct would violate both statutes.  *See* ECF No. 28 at 27–28, 34.  The parties do not challenge the contours of the law — that notice to the accused is the guiding principle.  Instead, the parties dispute whether the conduct for which the Judicial Panel found Plaintiffs guilty was actually charged.

22

### 1.    Nakanelua

Plaintiffs contend that the Judicial Panel found Nakanelua guilty of (1) failing overall to exercise his fiduciary duty; (2) failing to oversee financial matters on a day-to-day basis; and (3) failing to obtain approval before counter-signing a check for a documentary film.  ECF No. 55-1 at 18–20.  Defendants assert that the Decision described guilt as follows:  (1) that Nakanelua violated the AFSCME Constitution based on the audit's finding that documentation was missing for reimbursement payments in the thousands of dollars for expenses, and belated "certifications" submitted by Nakanelua did not overcome the shortcomings, ECF No. 63 ¶ 73; (2) that Nakanelua improperly used union funds based on his "overall failure to exercise fiduciary responsibility over UPW's finances," *id*. at ¶ 75; (3) that Nakanelua submitted expenses and obtained reimbursement without adequate documentation in violation of the AFSCME Financial Standards Code, *id.* ¶ 76; and (4) that Nakanelua failed to provide meaningful oversight of UPW funds, *id.*

The Court first notes that the Decision is a 45-page document describing the alleged violations of both Plaintiffs and other accused union officials.  *See* ECF No. 56-10.  It is not organized in a way that makes it easy to determine which facts support which alleged violation.  Thus, the Court looks to the charging documents for guidance as to how Nakanelua was charged and for what conduct he was found guilty.

23

The parties agree that the Judicial Panel did not find Nakanelua guilty — or at least did not punish him — for any of the charges in the first round of charging documents. *See* ECF No. 56 ¶¶ 11, 13, 15–16. The Decision specifically disposes of those charges and they are not the basis for Nakanelua's uncharged conduct claims. Thus, the amended charging document is the most pertinent. Relevant here, that document charges Nakanelua for submitting "certification" documents as receipts for illegal reimbursements and violating the UPW Constitution and the Financial Standards Code. *See* ECF No. 56-9; ECF No. 56 ¶ 17.

The Decision arguably found Nakanelua guilty of submitting certifications rather than receipts. *See* ECF No. 56-10 at 34 ("For expenses that still could not be supported with specific documentation, Certifications – essentially declarations the expenditure was for a business purpose – were provided in an attempt to show the expenditure in question was proper. But the final report explained that Certifications 'cannot be treated as adequate support documentation.'"); *id.* at 40 ("The audit team identified thousands of dollars in [Nakanelua's] expenses that were paid when documentation was missing. This violates Article X, Section 2(B). Belated certifications do not overcome these shortcomings."). As stated, such conduct was in fact charged.

The question then becomes whether the amended charging documents' accusation that Nakanelua violated the UPW Constitution and the Financial

Standards Code covers the additional conduct for which Nakanelua was found guilty.  As discussed above, because the amended charging document incorporated the Final Report, that report informs the Court's inquiry.

The first page of the Final Report provides:

> We are greatly concerned that UPW has not paid sufficient attention to the requirements of the Financial Standards Code. There does not appear to be meaningful oversight on how funds are spent or accounted for and as detailed below, the opportunity for abuse or misuse of union funds exists as a result.  The UPW Constitution provides that the State Director is responsible for all financial matters of UPW on a day to day basis, including ensuring that funds are properly collected, spent and accounted for, and this inherently includes oversight of those who are engaged in these activities for the Local.

ECF No. 63-14 at 52.  The report then lists "areas of concern" and details specific issues within each of those areas.  *Id.*

For example, the Final Report outlines the use of credit cards as an area of concern.  *Id.*  Under the credit cards section, the Final Report notes that one of the union's credit cards is only for Nakanelua's use; that more than $6,000 in charges were not reported on expense reports for that card; and that even when there were expense reports, they were unsupported by receipts or did not document attendees or the union business purpose.  *Id.* at 53.  The Final Report further details a list of concerns about credit card use that includes Nakanelua's personal use of the credit card and insufficient supporting documentation.  *Id.* at 55.  Under "Credit Cards —

Recommendations," the Final Report states that the practices observed and described "are in clear violation of the Financial Standards Code." *Id.* at 56.

The Final Report also includes in its conclusion section the following statement from Nakanelua:

> "As State Director of UPW, I am ultimately the sole individual that is responsible for the finances, recordkeeping, and fiscal administration of UPW. I am the chief administrator of UPW and responsible for its day to day operations. I take full responsibility for the draft audit report findings and am always seeking to improve UPW's policies and procedures, fiscal administration, and internal controls."

*Id.* at 76.

From this review of the Final Report — and even accepting Nakanelua's characterization that he was found guilty of failing overall to exercise his fiduciary duty and to oversee financial matters on a day-to-day basis — the Court concludes that Nakanelua has not met his burden of establishing that such conduct was uncharged as a matter of law.

Further, there is evidence in the record that Nakanelua understood his duties under the UPW Constitution and the Financial Standards, and that the Final Report represented the basis for the charges.  Most obviously, his statement included in the conclusion of the Final Report recognizes that he was responsible for the day-to-day operations, including financial administration of the union.  ECF No. 63-14 at 76.  Nakanelua's written answers to the charges ahead of trial cite, and

26

emphasize in bold font, the UPW constitutional provisions that set forth his responsibilities to manage the finances of the union. *See id.* at 84–85. That he cited these provisions and then goes on in the same document to attempt to refute certain conclusions of the Final Report suggests he was treating the Final Report as a charging document. *See id.* at 99–107. Thus, reading the record in the light most favorable to the non-moving parties, the Court holds that a jury could conclude that Nakanelua was charged with and found guilty of failing overall to exercise his fiduciary duty and to oversee financial matters on a day-to-day basis.

The matter of the $165,603 check for a documentary film is a different story. As Nakanelua points out, the documentary film is not mentioned in the Final Report or the amended charging document. *See* ECF No. 71 at 13–14. Defendants fail to proffer any evidence or even an argument in response to Nakanelua's claim that he was never charged with, but convicted of, counter-signing the check without approval. In fact, Defendants only mention of the check seems intentionally vague and is in the fact section of their opposition: "The evidence also showed these failings were continuing, noting Nakanelua had recently signed a check for $165,603 without approval and over the objections of other responsible UPW officers." ECF No. 64 at 15.

But the Decision explicitly scolds Nakanelua for signing the check without approval:

> Dayton Nakanelua is found guilty of violating Article X, Section 2(B) of the [AFSCME] Constitution for his overall failure to exercise his fiduciary responsibility over UPW's finances, including for submitting expenses and obtaining reimbursement without adequate documentation, and counter-signing the $165,603 check for a documentary film without approval by the SEB in violation of the UPW Constitution and when Brother Wataru was both available, and Brother Nakanelua knew about Wataru's valid reservations.

ECF No. 56-10 at 44–45.  Further, the Decision recognizes that the check only became an issue during trial and was admitted over objection seemingly to demonstrate that Nakanelua was not reforming his financial practices in response to the Final Report.  *See id*. at 41.

That this check was not mentioned in the charging documents or Final Report strikes the Court as troubling to any idea of due process included in the AFSCME Constitution or the right to a full and fair hearing under the LMRDA.  But, nonetheless, there are factual questions about whether the Judicial Panel would have found Nakanelua guilty absent any discussion of the check.  The sentence from the Decision cited above demonstrates that Nakanelua was guilty for his overall failure to exercise his fiduciary duty, *including* for failure to provide adequate financial documentation *and* for signing the check.  Whether the Judicial Panel would have found Nakanelua guilty absent any mention of the check is unclear on this record.  *Cf. Kent v. N.Y. State Pub. Emps. Fed'n*, No. 1:17-CV-0268 (GTS/CFH), 2020 WL 1531020, at *12 (N.D.N.Y. Mar. 31, 2020)

28

(explaining that plaintiff's uncharged conduct claim failed even though hearing panel discussed additional possible violations).  In other words, the Court concludes the factual questions as to what Nakanelua was found guilty of are better left to a jury.  *See Chapa v. Local 18*, 737 F.2d 929, 933–34 (11th Cir. 1984) (reversing district court's directed verdict for plaintiff and commenting that "[t]he actual written charges were also placed in evidence and we are unwilling to find them insufficient as a matter of law" (citation omitted)); *see also Local Union No. 38, Sheet Metal Workers' Int'l Ass'n v. Pelella*, 350 F.3d 73, 86–87, 91 (2d Cir. 2003) (declining to disturb jury verdict in favor of union member on LMRDA full and fair hearing claim).  Thus, Plaintiffs have failed to satisfy their burden, and the Court denies Nakanelua's Motion as to the uncharged conduct claims.

## 2.    Endo

Plaintiffs argue that the Judicial Panel found Endo guilty of a general "fail[ure] to oversee the financial records of UPW on a day-in and day-out basis" even though such a broad charge is not included in the charging documents.  ECF No. 55-1 at 29 (alteration in original).  Further, they contend that the more specific findings in the Decision were not alleged in the charging documents.  Defendants respond that Endo was found guilty for specific violations described in the Final Report including:  reimbursements that violated the Financial Standards Code; benefiting herself by obtaining reimbursements for her own credit card before

approval; arranging to pay herself without proper authorization; processing credit card payments without proper documentation; submitting expense reports for others when documentation was lacking; failing to maintain an inventory of gift cards and office equipment; failing to maintain adequate leave records; and not regularly reconciling bank accounts. *See* ECF No. 64 at 15–16, 26–27.

The Court's review of the Decision demonstrates that the Judicial Panel found the following regarding Endo's conduct:

- "In general, . . . Endo has failed to oversee the financial records and practices of UPW on a day-in and day-out basis." ECF No. 56-10 at 37.

- "The record-keeping system was impenetrable, and many reimbursements violated the Financial Standards Code." *Id.*

- "[S]he regularly moved to benefit herself improperly, by obtaining reimbursement for her expenses placed on her own credit card before State Director Nakanelua approved her expenses. All of this conduct violated Article X, Section 2(B)" *Id.* at 38.

- "Endo also improperly used union funds within the meaning of Article X, Section 2(B)" by: "making credit card payments without proper documentation; submitting expense reports for others when documentation was missing; failing to maintain an inventory of gift cards and office equipment; failing to maintain adequate leave records; and not regularly reconciling bank accounts." *Id.*

- "The instance of her keeping cash in her desk for months after a canceled event, and the entirety of the money not being accounted for, is particularly troubling and demonstrates a serious lack of understanding of the importance of financial

controls and accountability of the members' money." *Id.* at 38–39.

- "Endo is also found guilty of receiving per diem payments that were not supported by properly documented expense reports in violation of Article X, Section 2(B) and the AFSCME Financial Standards Code." *Id.* at 39.

- "Endo is found guilty of violating Article X, Section 2(B) of the [AFSCME] Constitution for her wholesale failure to manage UPW's finances, including her mishandling of cash (shown by the failure to account for cash related to a canceled event); inability to maintain and file receipts and prepare expense reports on a timely basis in conformance with the Financial Standards Code; paying credit card bills without adequate documentation; neglecting to maintain an inventory for UPW property including gift cards and office equipment; not maintaining leave records; failing to reconcile bank accounts on a timely basis; and obtaining reimbursement for her own expenses before State Director Nakanelua approved them." *Id.* at 44.

First, addressing Plaintiffs' contention that Endo was found guilty of a general failure to oversee financial records, the Court disagrees with Plaintiffs' characterization of the Decision. While the Decision notes Endo's general failure, it then details specific issues that demonstrate Endo's broader alleged failure. *See id.* at 37–39. Viewed in the light most favorable to the non-moving party, Endo was found guilty of the specific conduct and not her general financial management. Further, in finding Endo guilty the Decision cites Article X, Section 2(B) of the AFSCME Constitution, which prohibits "[m]isappropriation, embezzlement, or improper or illegal use of union funds." ECF No. 56-4 at 9. Thus, a reading of the

Decision in context suggests that she was found guilty of one of the specified violations of the AFSCME constitutional provision.  In short, Endo has failed to satisfy that no reasonable fact finder could conclude that she was charged with all of the conduct for which she was found guilty.

Second, Plaintiffs do not challenge, and thus concede for the purposes of their Motion, that the specific violations described in the Decision are also in the Final Report.  *See generally* ECF No. 71.  The Court's review of the Final Report confirms this.  For example, the Final Report describes Endo's union purchases on her personal card that were not supported by detailed receipts.  *See* ECF No. 63-14 at 58–63 (describing reimbursements to Endo with inadequate supporting documentation).  Further, the Final Report describes the cash from a canceled event that Endo kept.  *See id.* at 62; ECF No. 63-15 at 34–35 (Endo's written answer to the Final Report's discussion of the cash).  Therefore, because Plaintiffs have failed to direct the Court to any uncharged conduct for which Endo was found guilty, they cannot prevail on their Motion on this ground.[5]

---

[5]  Defendants also argue that Plaintiffs uncharged conduct claim fails because the Judicial panel's decision was based on Plaintiffs' testimony during the hearing. *See* ECF No. 64 at 28 (citing *Int'l Bhd. of Boilermakers v. Hardeman*, 401 U.S. 233, 247 (1971)).  The Court rejects this argument.  *Hardeman* is inapposite in that it deals with sufficiency of the evidence presented during a hearing.  *See Hardeman*, 401 U.S. at 247.  Plaintiffs' alleged injury stems from the lack of notice inherent in being convicted of uncharged conduct.

D.    **LMRA Specificity**

Plaintiffs base their LMRA specificity claims on Article X, Section 6 of the

AFSCME Constitution.  *See* ECF No. 55 at 23.  Article X, Section 6 provides, in

part:  "The charges shall be specific, citing in detail the nature, the date, and the

circumstances of the alleged offense and, where a violation of a constitutional

provision is alleged, the specific Section shall be cited, along with the specific act

or failure to act which constitutes the alleged violation."  ECF No. 56 ¶ 5; ECF No.

56-4 at 12.  Plaintiffs then parse each individual charging document and argue that

portions violate Article X, Section 6.  *See* ECF No. 55-1 at 24–29.

Defendants respond that there is little case law as to specificity under the

LMRA and that the Court must give deference to Defendants' interpretations of

their own constitutions.  *See* ECF No. 64 at 29–31.  Further, Defendants note that

past union disciplinary hearing precedent establishes that the instant charges do not

violate the AFSCME Constitution's right to specificity.  *Id.* at 31.  Defendants then

apply the purported deference due and argue that because the charging documents

incorporate the Final Report, and because the Final Report provides sufficient

detail to put Plaintiffs on notice about the charges, the charges are specific enough

under the LMRA.  *Id.* at 31–33.

The Court recognizes the dearth of LMRA caselaw as to specificity.  This

lack of guidance is unsurprising considering that the LMRA claim is based on a

specific provision of the AFSCME Constitution that seemingly has not faced challenge in court.  Nonetheless, LMRDA caselaw and general principles of contract interpretation, due process, and labor law inform the Court's inquiry. First, the Court has already held that the specificity provision in the LMRDA provides a floor for interpreting the specificity claim under the LMRA.  *See* ECF No. 28 at 26 ("[U]nion members are entitled to all procedural rights contained in the LMRDA *in addition to* any further procedural rights outlined in the union's governing documents." (citation omitted)).  Second, Defendants accurately state that the Court must give deference to their interpretation of the AFSCME Constitution.  *See United Bhd. of Carpenters Local 42-L v. United Bhd. of Carpenters*, 73 F.3d 958, 961 (9th Cir. 1996) ("[A] union's interpretation of its own rules, regulations, and constitution is entitled to a high degree of deference."). But no amount of deference would lead the Court to ignore the plain language of the AFSCME Constitution.  And, as to what the general principles of due process law and the LMRDA require, the Court has previously explained that notice to the accused is the object of the inquiry.  *See supra* at 17.  With that in mind, the Court turns to the parties' arguments.

First, Plaintiffs view each charging document in isolation and then point out perceived violations of Article X, Section 6.  The Court will not imitate Plaintiffs' approach, which would limit its inquiry.  For the reasons described above, the

Court will view the charging documents in totality and as incorporating the Final Report. *See supra* at 16–22.

Further, Plaintiffs concede, as they must, that Plaintiffs were not found guilty — or, in the case of Nakanelua's conduct regarding PAC funds, only reprimanded and warned — of any of the alleged violations in the first round of charging documents that preceded the Final Report. *See* ECF No. 56 ¶¶ 8, 11, 13, 15–16.  As to those charges, the Court denies Plaintiffs' Motion for two separate reasons.

While the Ninth Circuit has not held that a plaintiff in an LMRDA specificity action must establish prejudice, it has intimated that such a showing may be required.  *See Johnson*, 182 F.3d at 1076–77 ("We further hold that, to the extent a showing of prejudice is required, an absence of factual detail is sufficiently egregious to render the charges inherently prejudicial."); *see also Hardeman*, 401 U.S. at 245 ("Where, as here, the union's charges make reference to specific written provisions, [29 U.S.C. § 411(a)(5)] obviously empowers the federal courts to examine those provisions and determine whether the union member had been misled or otherwise prejudiced in the presentation of his defense.").  To the extent Plaintiffs must establish prejudice, they have failed to do so for the purposes of this Motion because the Judicial Panel did not punish them for any of the charges set forth in the first round of charging documents.

Moreover, there is evidence in the record that supports the conclusion Plaintiffs had actual notice of the charges against them.  *See* ECF No. 63-14 at 99–107 (Nakanelua's written answer to the charges addressing the Final Report); ECF No. 63-15 at 18–45 (Endo's written answer to the charges addressing the Final Report).

The Court would also deny Plaintiffs' Motion as to the initial charges because there is a factual issue as to whether they were sufficiently specific under Article X, Section 6.  That section requires charges to provide in detail the (1) nature, (2) date, and (3) circumstances of the alleged violations, and (4) the constitutional provision at issue.  ECF No. 56 ¶ 5.  The Final Report combined with the charging documents discuss the nature, timeframes, and circumstances of the charged conduct.  *See* ECF No. 63-14 at 68–70 (discussing the PAC account); ECF No. 56-7 (noting that since 2007 Nakanelua usually stayed at home Mondays, Tuesdays, and Fridays and submitted hours for those days); ECF No. 56-8 (accusing Nakanelua of sending too many UPW staff members to specific conventions in Las Vegas, Boston, and an upcoming AFSCME Study Program); *id.* (describing how Nakanelua used union funds to appeal a specific AFSCME decision); ECF No. 63-14 at 65 (explaining that "Hawaiian Airlines program records were not available at the start of our review but were obtained from the program for the start in 2008 to July 16, 2019.  The only redemption of points

(35,000 miles in 2015) was well documented, for valid union purpose, and was approved and reported to the executive board.").

Further, as to the constitutional provision, Defendants argue that the judicial panel only found Plaintiffs guilty of Article X, Section 2(B) of the AFSCME Constitution.  That provision states that "[m]isappropriation, embezzlement, or improper or illegal use of union funds" shall constitute the basis for the filing of charges.  ECF No. 56-4 at 9.  While neither the charging documents nor the Final Report cite this provision, the charging documents each accuse plaintiffs of "misappropriation," "theft," "embezzlement," "improper use," and/or "illegal use" of union funds in violation of the UPW and AFSCME Constitutions.  *See, e.g.*, ECF No. 56-8 at 2.  Based on the use of this language, there is at least a factual question as to whether the charges sufficiently cite the constitutional provision to have put Plaintiffs on notice.

The Court also concludes that there is at least a factual issue as to the whether the charges based on the amended charging documents and the incorporated Final Report are sufficiently specific under the AFSCME constitution.  Again, the Final Report details the charges against Plaintiffs.  For example, the Final Report discusses Nakanelua's use of certifications, *see, e.g.*, ECF No. 63-14 at 53, and provides the nature, date, and circumstances surrounding the certifications.  Likewise, the Final Report details specific purchases that Endo

37

made using her personal credit card and for which she failed to submit appropriate supporting documentation. *Id.* at 58–63. And the charging documents themselves use the language from Article X, Section 2(B) to raise a question as to whether Plaintiffs were on notice about which constitutional provision they were accused of violating.[6] Thus, taken as a whole, the amended charging documents raise a factual question as to whether the charges were specific enough to comply with the AFSCME Constitution and provide notice to the accused.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs' partial Motion for Summary Judgment on Liability for Counts I and II of the Complaint, ECF No. 55.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, November 5, 2021.



Jill A. Otake
United States District Judge

Civil No. 20-00442-JAO-KJM, *Nakanelua, et al. v. United Public Workers, AFSCME Local 646, AFL-CIO, et al.*; ORDER DENYING PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY FOR COUNTS I AND II OF THE COMPLAINT

---

[6] In the absence of any case law interpreting Article X, Section 6 of the AFSCME Constitution, the Court concludes that Plaintiffs have not met their burden of establishing a violation as a matter of law. The Court is hesitant to interpret this constitutional provision as requiring precise citations to dates or constitutional provisions, especially when, as here, there are indications in the record that Plaintiffs had actual notice of the charges they faced.