IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DAYTON NAKANELUA, JEANNE ENDO, | CIVIL NO. 20-00442 JAO-KJM |
| Plaintiffs, | |
| vs. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| UNITED PUBLIC WORKERS, AFSCME, LOCAL 646, AFL-CIO, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, | |
| Defendants. | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Dayton Nakanelua and Jeanne Endo (collectively, "Plaintiffs")

bring this Labor Management Relations Act ("LMRA") (Count I), Labor-

Management Reporting and Disclosure Act ("LMRDA") (Count II), and

Conversion (Count III) action against Defendants the United Public Workers,

AFSCME, Local 646, AFL-CIO ("UPW") and its parent organization, the

American Federation of State, County and Municipal Workers ("AFSCME") (collectively, "Defendants").

Nakanelua is the former State Director and Endo the former Administrator of Fiscal and Membership Services ("FMS Administrator") of UPW.  In March 2020, they faced trial before the AFSCME Judicial Panel for alleged violations of Defendants' Constitutions and policies.  The Judicial Panel found them guilty and removed Nakanelua from office and terminated Endo from employment with UPW.  In general, Plaintiffs' LMRA and LMRDA claims challenge the Judicial Panel hearing as unfair under Defendants' Constitutions and the LMRDA's protections of basic due process.

Defendants now move for summary judgment on all counts ("Motion").  *See* ECF No. 78.  Plaintiffs had previous moved for partial summary judgment as to liability on Counts I and II.  *See* ECF No. 55.  The Court denied Plaintiffs' motion ("First MSJ Order").  ECF No. 92.  While there is significant overlap between the parties' respective motions for summary judgment, Defendants raise additional issues in the instant Motion.

For the following reasons, the Court GRANTS IN PART AND DENIES IN PART the Motion.

# I.    BACKGROUND

## A.    Facts

Unless otherwise indicated, the following facts are undisputed.

UPW is a labor union that represents approximately 13,000 members across the State of Hawai'i, most of whom are state, county, and city employees.  ECF No. 1 ¶ 7; ECF No. 44 ¶ 4.  AFSCME is an international labor union and is UPW's parent organization.  *See* ECF No. 56 ¶¶ 1–2; ECF No. 63 ¶¶ 1–2.[1]  UPW is governed by its Constitution, which does not contain any substantive provisions governing discipline or charges.  ECF No. 56 ¶ 3; ECF No. 63 ¶ 3.  Instead, the UPW Constitution incorporates by reference the AFSCME Constitution.  ECF No. 56 ¶ 3; ECF No. 63 ¶ 3.

As relevant to the instant proceedings, the AFSCME Constitution contains a Bill of Rights for Members, which states that "[c]harges against a member or officer shall be specific and shall be only on grounds provided in this Constitution.  Accused members or officers shall have the right to a fair trial with strict

---

[1]  Both parties recite facts based on evidence provided in relation to Plaintiffs' partial motion for summary judgment.  *See* ECF No. 78-1 at 9–10 (noting that the parties provided the Court with a detailed factual background and that it would not burden the Court with repetition on Defendants' Motion); ECF No. 80 ¶ 1 (citing exhibits filed in connection with Plaintiffs' partial motion for summary judgment); ECF No. 94 ¶ 1 (same).  The Court will do the same where appropriate to provide a more fulsome description of the background of this case.

adherence to due process." ECF No. 80-14 at 6.  Additionally, Article X — which relates to Judicial Procedure — Section 6 provides:

> Charges shall be in writing and shall be signed by the member or members bringing the charges.  The charges shall be specific, citing in detail the nature, the date, and the circumstances of the alleged offense and, where a violation of a constitutional provision is alleged, the specific Section shall be cited, along with the specific act or failure to act which constitutes the alleged violation.

*Id.* at 23.  Article X, Section 12(J) provides that an accused will be presumed innocent until proven guilty.  *Id.* at 25.

Nakanelua assumed the position of State Director of UPW in 2004.  ECF No. 1 ¶ 9; ECF No. 44 ¶ 4.  Endo was appointed as UPW's FMS Administrator in 2004.  ECF No. 1 ¶ 12; ECF No. 44 ¶ 7.  As the FMS Administrator, Endo was also UPW's sole procurement officer; managed UPW's computer and communications systems; managed UPW's Human Resources department; served as food and beverage coordinator, special events coordinator, and mailing coordinator; and was responsible for coordinating the repairs and maintenance of UPW's offices across the State.  ECF No. 1 ¶ 13; ECF No. 44 ¶ 7.

Beginning in April 2019, Alton Nosaka ("Nosaka"), the Vice President of the UPW Division for Hawaiʻi Island, filed a series of charges against Plaintiffs.  *See* ECF No. 80 ¶ 1; ECF No. 56-11.  First, Nosaka filed charges against Endo, alleging that she misused "the Corporate Hawaiian Miles Points for personal gain

without proper approval." ECF No. 56-11. A few weeks later, the first charge against Nakanelua alleged that he had misappropriated funds and failed to obtain approval for using the funds of the UPW's political action committee ("PAC"). ECF No. 56-6. In a second charging document directed to Nakanelua, Nosaka accused Nakanelua of submitting hours of work when he was in fact at home. ECF No. 56-7. The third charge against Nakanelua alleged that he had sent too many UPW staff to the AFSCME convention and that Nakanelua had hired two law firms without proper authorization. ECF No. 56-8.

After this first round of charges, AFSCME's president determined an audit of UPW's financial books and records was appropriate before the charges could be considered further since "[a]ll charges generally allege financial mismanagement and improper or unauthorized expenditures." *See* ECF No. 63 ¶ 53; ECF No. 72 ¶ 53; ECF No. 80 ¶ 3. The audit took place in August 2019 and the auditor produced a draft report that identified "significant deficiencies in the accounting procedures" and "serious failings in accountability in the expenditure of [UPW's] funds." ECF No. 63 ¶¶ 55–56; *see* ECF No. 80 ¶ 3. Plaintiffs received the draft report and submitted a 14-page response detailing Nakanelua's "corrections and clarifications." ECF No. 80 ¶ 4; ECF No. 94 ¶ 4; *see* ECF No. 80-15 at 34.

On December 19, 2019, the auditor — Selma Golding — replied to Nakanelua's response to inform him that she would not be changing the draft and

to provide him a copy of the final audit report ("Final Report").  ECF No. 80-15 at

50–51.  In addition to the Final Report, the auditor explained to Nakanelua in the

cover letter that "[i]n situations where receipts could not be provided you included

a document titled 'Certification' where the signer certified the purchase,

reimbursement and/or credit card charge was a valid union expenditure.  All these

'Certifications' were dated after our visit and cannot be treated as adequate support

documentation."  *Id.* at 50.

On January 21, 2020, Nosaka filed amended charges against Nakanelua and

Endo.  ECF Nos. 56-9, 56-12.  Both amended charging documents state:  "Based

on the AFSCME Final Audit report dated December 19, 2019 . . . amended charges

are as follows[.]"  *See* ECF No. 56-9 (Nakanelua); ECF No. 56-12 (Endo).  Nosaka

charged Nakanelua with:

> (1) misusing union funds for Thanksgiving and Christmas luncheons without authorization;
>
> (2) submitting "certification" documents as receipts for illegal reimbursements; and
>
> (3) violating the UPW Constitution and the Financial Standards Code.

ECF No. 56-9.  As to Endo, Nosaka charged her with six offenses:

> (1) misappropriation for using personal credit cards to gain points;
>
> (2) paying for gift cards and Christmas luncheons without proper authorization;

(3) submitting false financial reports;

(4) providing "certification" documents as receipts for illegal reimbursements;

(5) giving away gift cards to former State Executive Board members without proper approval; and

(6) receiving per diem payments without the required overnight stay.

ECF No. 56-12.

Ahead of trial before the Judicial Panel, both Plaintiffs submitted written answers to the charges. *See* ECF No. 80-15 at 79; ECF No. 80-17 at 19. In their written answers, Plaintiffs cited and responded to allegations of misconduct described in the Final Report. *See* ECF No. 80-15 at 99–107 (Nakanelua); ECF No. 80-17 at 31–53 (Endo). For example, Nakanelua provided "[i]n response to the above-cited finding of the Final [Report]," an explanation about his use of certifications in lieu of receipts. ECF No. 80-15 at 100. Likewise, Endo included in her written answers "a full and complete response to the 19 of 20 bullets directly affecting [her] in the [Final Report]." ECF No. 80-17 at 31.

Trial occurred on March 5 and 6, 2020 and the Judicial Panel announced that trial would be conducted in accordance with the AFSCME Constitution and the Judicial Panel Rules. ECF No. 80 ¶ 8. The Judicial Panel released its decision on April 30, 2020 ("Decision"). ECF No. 80 ¶

7

13; ECF No. 80-11.  As to Endo, the Decision dismissed the charges laid out in the first charging document that she misused the Corporate Hawaiian Miles Points for personal gain.  ECF No. 56 ¶ 8; ECF No. 80-11 at 39.  As to Nakanelua, the Judicial Panel either dismissed or only issued a reprimand on the charges set forth in the first round of charging documents.  *See* ECF No. 80-11 at 39–41, 43.

But the Judicial Panel found both Plaintiffs guilty for some conduct.  *See id.* at 38–45.  The parties dispute whether that conduct was alleged in the January 2020 amended charging documents.  *See* ECF No. 94 ¶¶ 50, 53; ECF No. 100 ¶¶ 50, 53.  First, the Judicial Panel found Endo guilty of:

> [V]iolating Article X, Section 2(B) of the International Constitution for her wholesale failure to manage UPW's finances, including her mishandling of cash (shown by the failure to account for cash related to a canceled event); inability to maintain and file receipts and prepare expense reports on a timely basis in conformance with the Financial Standards Code; paying credit card bills without adequate documentation; neglecting to maintain an inventory for UPW property including gift cards and office equipment; not maintaining leave records; failing to reconcile bank accounts on a timely basis; and obtaining reimbursement for her own expenses before State Director Nakanelua approved them.

ECF No. 80-11 at 44.  As punishment, the Judicial Panel terminated Endo's employment with UPW and prohibited her from "holding any office or position with UPW or any other affiliate of AFSCME at any time."  *Id*.

8

The Judicial Panel also found Nakanelua guilty of violating Article X, Section 2(B) of the AFSCME Constitution.  *Id*. at 44–45.  The Decision noted Nakanelua's "overall failure to exercise his fiduciary responsibility over UPW's finances, including for submitting expenses and obtaining reimbursement without adequate documentation, and counter-signing the $165,603 check for a documentary film without approval."  *Id*.  Additionally, the Decision describes how "[t]he audit team identified thousands of dollars in his expenses that were paid when documentation was missing.  This violates Article X, Section 2(B).  Belated certifications do not overcome these shortcomings."  *Id*. at 40.  The Judicial Panel removed Nakanelua from office and prohibited him from "holding office at any level of the Union for a period of four years."  *Id*. at 45.

After the trial, Plaintiffs appealed the Decision within the union appellate scheme.  *See* ECF No. 94-10.  In connection with their appeal, they requested the trial exhibits.  *Id*. at 1.  They noted that while they had copies during the trial, they returned those to UPW.  *Id.*  A court reporter created a transcript of the Judicial Panel Trial.  *See* ECF No. 80 ¶ 27.  Plaintiffs did not purchase a copy from the court reporter.  *See* ECF No. 80-15 at 108.

After Defendants terminated Endo, they entered her office and found it filled with various items.  ECF No. 80 ¶ 35; ECF No. 94 ¶ 35.  Endo requested that Defendants return her personal items and sent Defendants an email with the items

in dispute.  *See* ECF No. 94-13.  Defendants eventually returned many of Endo's

personal items.  ECF No. 80 ¶ 39.  But Defendants retained approximately $1200

in cash and $200 in postage stamps that Endo claims are hers.  *Id.*

## B.   Procedural History

As stated above, Plaintiffs brought suit based on three claims:  Count I for

violation of the LMRA; Count II for violation of the LMRDA; and Count III for

conversion.  *See generally* ECF No. 1.

On November 25, 2020, Defendants moved to dismiss the Complaint in its

entirety, *see* ECF No. 11, and Plaintiffs opposed, ECF No. 19.  The Court granted

in part and denied in part the motion to dismiss.  ECF No. 28.  The Court granted

leave to amend on the claims that were dismissed.  *Id.* at 41.  Plaintiffs did not

amend their Complaint and Defendants answered.  ECF No. 44.

Plaintiffs moved for partial summary judgment as to liability on certain

portions of Counts I and II that remained live after this Court's Order on the

motion to dismiss.  ECF No. 55.  Defendants opposed and asked the Court to enter

summary judgment in their favor.  ECF No. 64.  The Court denied Plaintiffs'

motion.  *See* ECF No. 92.

Defendants now move for summary judgment as to all Counts.  *See* ECF No.

78.  Plaintiffs filed a motion to strike the portions of Defendants' memorandum in

support of their Motion that attempted to incorporate Defendants' briefing on

10

Plaintiffs' motion for partial summary judgment.  *See* ECF No. 89.  The Court

granted Plaintiffs' motion to strike those portions and so will not consider them

here.  ECF No. 91.  Plaintiffs thereafter opposed Defendants' Motion, *see* ECF No.

93, and Defendants filed a reply, ECF No. 99.

## II.    LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R.

Civ. P. 56(a).  "A party seeking summary judgment bears the initial burden of

informing the court of the basis for its motion and of identifying those portions of

the pleadings and discovery responses that demonstrate the absence of a genuine

issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th

Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see T.W.*

*Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.

1987).  In a motion for summary judgment, the court must view the facts in the

light most favorable to the nonmoving party.  *See State Farm Fire & Cas. Co. v.*

*Martin*, 872 F.2d 319, 320 (9th Cir. 1989) (per curiam).

Once the moving party has met its burden of demonstrating the absence of

any genuine issue of material fact, the nonmoving party must set forth specific

facts showing that there is a genuine issue for trial.  *See T.W. Elec.*, 809 F.2d at

630; Fed. R. Civ. P. 56(c).  The opposing party may not defeat a motion for

summary judgment in the absence of any significant probative evidence tending to support its legal theory.  *See Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  The nonmoving party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial.  *See T.W. Elec.*, 809 F.2d at 630; *Blue Ocean Pres. Soc'y v. Watkins*, 754 F. Supp. 1450, 1455 (D. Haw. 1991).

If the nonmoving party fails to assert specific facts, beyond the mere allegations or denials in its response, summary judgment, if appropriate, shall be entered.  *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990); Fed. R. Civ. P. 56(e).  There is no genuine issue of fact if the opposing party fails to offer evidence sufficient to establish the existence of an element essential to that party's case.  *See Celotex*, 477 U.S. at 322; *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994); *Blue Ocean*, 754 F. Supp. at 1455.

In considering a motion for summary judgment, "the court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence."  *T.W. Elec.*, 809 F.2d at 631 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986)) (footnote omitted).  Inferences must be drawn in favor of the nonmoving party.  *See id.*  However, when the opposing party offers no direct evidence of a

material fact, inferences may be drawn only if they are reasonable in light of the other undisputed background or contextual facts and if they are permissible under the governing substantive law. *See id.* at 631–32. If the factual context makes the opposing party's claim implausible, that party must come forward with more persuasive evidence than otherwise necessary to show there is a genuine issue for trial. *See Bator v. Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994) (citing *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

### III.   DISCUSSION

**A.     Counts I & II – LMRA And LMRDA Claim**

In Count I of the Complaint, Plaintiffs allege that the charges Nosaka filed against them and Defendants' handling of the charges violated the AFSCME Constitution, giving rise to a breach of contract claim under Section 301 of the LMRA, codified at 29 U.S.C. § 185(a). *See* ECF No. 1 at 11–14.

After the Court granted in part and denied in part Defendants' motion to dismiss, ECF No. 28, and Plaintiffs' failure to amend, ECF No. 44, Plaintiffs' LMRA claim was premised on five theories of liability. Plaintiffs claim that Defendants breached the AFSCME Constitution by:  (1) placing the burden of proof on Plaintiffs at the Judicial Panel trial; (2) refusing to provide Plaintiffs with the Judicial Panel trial record; (3) failing to charge Plaintiffs with the requisite

specificity; (4) finding Plaintiffs guilty of uncharged conduct; and (5) finding

Plaintiffs guilty of conduct not supported by the record.  *See* ECF No. 28 at 39–40.

In Count II of the Complaint, Plaintiffs allege that Defendants' proceedings

against them violated Section 101(a)(5) of the LMRDA, which provides:  "No

member of any labor organization may be fined, suspended, expelled or otherwise

disciplined except for nonpayment of dues by such organization or by any officer

thereof unless such member has been (A) served with written specific charges; (B)

given a reasonable time to prepare his defense; (C) afforded a full and fair

hearing."  29 U.S.C. § 411(a)(5).  *See* ECF No. 1 at 14–15.

After the Court granted Defendants' motion to dismiss on Plaintiffs'

LMRDA specificity claim pursuant to Section 105(a)(5)(A), *see* ECF No. 28 at 32

(citing 29 U.S.C. § 411(a)(5)(A)), Plaintiffs' only live claim under the LMRDA is

for a "full and fair hearing."  Plaintiffs' remaining theories of liability on the claim

are that (1) Defendants placed the burden of proof on Plaintiffs; (2) Defendants

failed to provide Plaintiffs with a trial record; (3) Defendants convicted Plaintiffs

of uncharged conduct; and (4) the evidence did not support Plaintiffs' convictions.

ECF No. 28 at 40.

For the most part, the parties treat the claims under the LMRA and LMRDA

as basically identical with respect to the various theories of liability.  *See* ECF No.

93 at 11 n.1; ECF No. 80-1 at 25 (citing LMRA portions of brief to support the

14

Motion as it pertains to LMRDA).  Where the causes of action are distinct, the Court addresses them separately.

### 1. Burden Of Proof

Pursuant to Article X, Sections 12 and 14 of the AFSCME Constitution, those accused of wrongdoing have the right to be presumed innocent unless proven guilty and the charging party assumes the burden of proof.  *See* ECF No. 94-5 at 9–10.  Defendants move for summary judgment as to this claim, arguing that the Judicial Panel conducted the trial in accordance with the constitutional provisions and that Plaintiffs have failed to present any evidence to the contrary.  ECF No. 78-1 at 15–16.  Plaintiffs first argue that Defendants have failed to produce any evidence in support of their position that the burden was proper and have therefore failed to meet their burden on summary judgment.  ECF No. 93 at 12.  Plaintiffs also assert that there is a factual question as to who carried the burden of proof based on (1) "the lack of evidence adduced by the Charging Party," and (2) the Judicial Panel's "active questioning of Plaintiffs."  *See id.* at 12–13.

First, Defendants did produce evidence that the burden remained on the charging party.  Defendants demonstrated that the parties received copies of the AFSCME Constitution and the Judicial Panel Rules prior to the trial.  ECF No. 80 ¶ 26.  Both those documents place the burden of proof on the charging party.  *Id.* ¶ 21; ECF No. 80-14 at 25.  At the start of the trial, the chairperson of the Judicial

Panel explained that the proceedings would be conducted pursuant to the applicable sections of the AFSCME Constitution and in accordance with the Judicial Panel Rules. ECF No. 80-13 at 6. At one point during the trial, Nosaka asked the chairperson how much of the Final Report he needed to cover, and the chairperson responded, "[y]ou have to go into whatever you want to go in *to prove your case*." *Id.* at 9 (emphasis added). The foregoing undisputed facts demonstrate that the Judicial Panel was aware that the charging party bore the burden of proof and announced at the beginning and during trial that it would abide by that maxim. In short, Defendants have met their initial burden and Plaintiffs must offer evidence that raises a material issue of fact on the claim. But Plaintiffs fail to do so.

Plaintiffs' first argument that the purported "[c]omplete lack of evidence," ECF No. 93 at 14, in the charging party's case-in-chief *must* mean that the Judicial Panel reversed the burden of proof, fails. As an initial matter, Plaintiffs' theory simply repackages a challenge to the sufficiency of the evidence, which the Court addresses below. But for the purposes of this claim, the Court notes that Plaintiffs are incorrect that Defendants' case against them lacked evidence. Plaintiffs concede that the case-in-chief "consisted of the draft audit, UPW's response, the [Final Report], and the testimony of a single witness, Karen Tyler, AFSCME's lead auditor." *Id.* at 12. As one easy example of evidence, the Final Report details

Plaintiffs' use of "certifications" in situations where Plaintiffs could not provide receipts.  *See* ECF No. 80-15 at 55, 57; *see also id.* at 50.  The Decision took issue with Plaintiffs' use of such certifications and noted that the Final Report "explained that Certifications 'cannot be treated as adequate support documentation.'"  ECF No. 80-11 at 34.  Based on this evidence, the Judicial Panel concluded that "[t]he audit team identified thousands of dollars in [Nakanelua's] expenses that were paid when documentation was missing.  This violates Article X, Section 2(B).  Belated certifications do not overcome these shortcomings."  *Id.* at 40.  The Judicial Panel also found Endo guilty of "improperly us[ing] union funds within the meaning of Article X, Section 2(B).  The problems the [Final Report] identified, that fall within her authority as [FMS Administrator] [include] making credit card payments without proper documentation[.]"  *Id.* at 38.

The foregoing demonstrates that Plaintiffs are incorrect that Defendants' case-in-chief completely lacked evidence.  The Final Report provided evidence of problems with proper documentation for expenses.  The Judicial Panel accepted that evidence, applied the facts to the law, and concluded that Plaintiffs violated the AFSCME Constitution.  Whether Defendants properly charged Plaintiffs with such conduct is a different question which the Court addresses below.  But the premise underlying Plaintiffs' first theory as to why there is a triable issue on the supposedly reversed burden is unfounded.

17

Simply put, Plaintiffs' speculation that the Judicial Panel must have ruled against them because of an improperly placed burden of proof does not raise a material issue of fact.  There are countless reasons both proper and improper that a judicial body can find against an accused.  In the absence of evidence, the Court will not infer that the Judicial Panel found against Plaintiffs here based on a reversal of the burden of proof.  *See T.W. Elec.*, 809 F.2d at 631–32.

Similarly, Plaintiffs' characterization of the Judicial Panel's questions for Plaintiffs as "active" or "intense" fails to raise a triable issue on whether the burden was reversed.  *See, e.g.*, ECF No. 93 at 13, 14.  For an example of intense questioning, Plaintiffs direct the Court to one exchange between Nakanelua and one of the Judicial Panel judges where the judge asks Nakanelua whether UPW had established bylaws for its PAC committees.  *See* ECF No. 94-8 at 66–67. Even reading that exchange in the light most favorable to the Plaintiffs, there is nothing that suggests that the Judicial Panel had reversed the burden of proof.  The judge tried to get a yes or no answer on the record, but even if he did so with "an air of annoyance" as Plaintiffs assert, ECF No. 93 at 13, that alone does not provide a reasonable basis from which a jury could rule in Plaintiffs' favor on this theory.  Plaintiffs' other examples of active questioning are similar and do not support their argument.  *See* ECF No. 93 at 14 (citing examples of questioning). Plaintiffs provide no evidence that the Judicial Panel should have been precluded

from asking questions of them during the trial.  Nor do they cite any examples where the Judicial Panel required Plaintiffs to disprove their cases.

Further, the Judicial Panel acquitted or declined to find Plaintiffs guilty on some of the charges they faced.  *See* ECF No. 80-11 at 39–40.  For example, the Judicial Panel dismissed the charge that Nakanelua claimed unwarranted working hours "for lack of evidence."  ECF No. 80-11 at 39 n.11.  If the burden was on Plaintiffs to disprove the charge, lack of evidence would not be a sufficient reason to dismiss the charge.  In effect, Plaintiffs are asking the Court to assume that the Judicial Panel reversed the burden of proof on some of the charges against Plaintiffs but not on others.  Without any evidence, the Court will not infer such an error.

Thus, Plaintiffs have not submitted any evidence on their claim that Defendants placed the burden of proof on them during the Judicial Panel's trial.  Defendants' Motion is granted as to Plaintiffs' claims based on that theory.

### 2.    Trial Record

Plaintiffs challenge Defendants' failure to provide the trial exhibits, transcript, record, and other documents relevant to their appeal of the Judicial Panel's Decision.  *See* ECF No. 93 at 15.  For their LMRA claim on this theory, Plaintiffs rely on the guarantee in the AFSCME Constitution's Bill of Rights of a right to a fair trial with strict adherence to due process.  *See* ECF No. 80-14 at 6.

19

Defendants claim they were under no obligation to provide the documents under either the AFSCME Constitution or the LMRDA and are thus entitled to summary judgment. *See* ECF No. 78-1 at 16–17. Plaintiffs, in response, argue that Defendants had a copy of the record and that their refusal to share it prejudiced Plaintiffs and deprived them of due process. ECF No. 93 at 16. The Court concludes that Plaintiffs have failed to raise a triable issue on the trial records theory because they have not established a right under the LMRDA or under the AFSCME Constitution to receive the trial record free of charge from Defendants.

The Court determined that Plaintiffs had sufficiently pleaded LMRA and LMRDA claims on this theory in part based on *Kuebler v. Cleveland Lithographers & Photoengravers Union Local 24-P*, 473 F.2d 359 (6th Cir. 1973). *See* ECF No. 28 at 27. But *Kuebler* does not stand for the proposition that a union's failure to provide trial documents always infringes on the right to a fair trial.[2] *See Kuebler*, 473 F.2d at 364. In *Kuebler*, the Sixth Circuit held that the union's refusal "to supply [plaintiff] with information in [its] sole possession" rendered the plaintiff's right to appeal within the union structure "illusory." *Id.* The union trial in *Kuebler* also suffered from an obvious defect: those who investigated the charges against plaintiff also served as the adjudicative body. *Id.*

---

[2] *Kuebler* decided an LMRDA claim but informs the Court's analysis of Plaintiffs' LMRA claim. *See* ECF No. 28 at 27 (noting that LMRDA caselaw and general principles of due process are relevant to Plaintiffs' LMRA due process claims).

"Thus [plaintiff's] only hearing was before a tribunal which lacked the impartiality of a court and he was denied the opportunity for an effective appeal.  He was not afforded a full and fair hearing, and the proceedings against him were void."  *Id.*

Here, Plaintiffs cannot argue that Defendants had sole possession of the trial record nor that the Judicial Panel lacked impartiality.  Plaintiffs had copies of the trial exhibits during trial but believed that they were property of UPW and returned them to the union.  *See* ECF No. 94-10 at 1.  While it may have been courteous for Defendants to provide copies of the documents or to correct Plaintiffs if Plaintiffs were mistaken about the ownership of the documents, Defendants were not under any legal obligation to do so.  Defendants, therefore, cannot be held accountable for Plaintiffs' apparent error.  Further, Plaintiffs could have purchased a copy of the trial transcript from the court reporter but represent that they did not do so because of cost.  *See* ECF No. 80 ¶¶ 27, 30; ECF No. 93 at 15.  Plaintiffs do not dispute that they received copies of the charging documents and the Judicial Panel's decision.  ECF No. 80 ¶ 32; ECF No. 94 ¶ 32.  As to impartiality, there is no evidence of the type of structural defect that affected *Kuebler*.  In short, there is no indication in the record that Plaintiffs' appeal was illusory because of Defendants' behavior.

Defendants also argue that certain courts interpreting the LMRDA have found that the right to a full and fair hearing does not encompass a right to an

appeal.  ECF No. 78-1 at 14 (citing *Keipura v. Local Union 1091, United Steelworkers*, 358 F. Supp. 987, 992 (N.D. Ill. 1973)).  Defendants assert that if the LMRDA does not guarantee a right to an appeal, then it does not obligate a union to provide a record for an appeal.  There is little caselaw on the matter, but the Court need not decide that issue because Plaintiffs regardless have not demonstrated a legal right to the records under the LMRDA or LMRA.

Tellingly, Plaintiffs rely on the general guarantee of due process in the AFSCME Constitution for their LMRA claim on this theory.  In other words, they cannot direct the Court to any more specific provision in the constitution that guarantees the right to receive the complete trial transcript free of charge.  The AFSCME Constitution in fact suggests otherwise.  Article XI Sections 13 and 14 discuss the Judicial Panel appeal process.  Section 13 provides that "[a] copy of the decision of the Judicial Panel shall be transmitted to the accuser and . . . the accused."  ECF No. 80-14 at 35.  Section 14 then states that an appeal to the full Judicial Panel shall be "on the record previously established" and "supplemented by any written memoranda submitted by either party."  *Id.*  Section 13 demonstrates that the drafters of the AFSCME Constitution knew how to write a provision that obligated a party to transmit a document to an accused:  the decision of the Judicial Panel.  That Section 14 or any other provision in the AFSCME Constitution omit that the "record previously established" shall also "be

transmitted" to the accused suggests that no such obligation exists.  Thus, even though the AFSCME Constitution guarantees the right to an appeal, there is no indication that it guarantees the right to a free and complete record of the trial proceedings.  *Cf. Kent v. N.Y. State Pub. Emps. Fed'n*, No. 1:17-CV-0268 (GTS/CFH), 2020 WL 1531020, at *15 (N.D.N.Y. Mar. 31, 2020) ("Plaintiffs have failed to cite any legal authority to support their argument that making a record of a hearing is a requirement for receiving a 'full and fair hearing,' or that the absence of a record in this case rendered the proceedings unfair.").

In sum, other than *Kuebler*, which the Court finds distinguishable, Plaintiffs have not provided any precedent that the failure to provide a record of the trial, free of cost, represents a violation of the full and fair trial requirements of either the AFSCME Constitution or the LMRDA.  Plaintiffs have not demonstrated a legal right to the requested documents.  Thus, even reading the undisputed facts in the light most favorable to the Plaintiff, the Court concludes that Defendants are entitled to summary judgment on Plaintiffs' theory that the failure to share the trial record constitutes a violation of the LMRA or LMRDA.

### 3.    Specificity Of Charges

After the Court granted Defendants' motion to dismiss as to the LMRDA claim on Plaintiffs' theory that the charges against them lacked the requisite specificity, that theory is only live under the LMRA.  In its First MSJ Order, the

23

Court concluded that Plaintiffs were not entitled to summary judgment on their claim in part because there was a factual question as to whether the charges met the specificity requirement of Article X, Section 6 of the AFSCME Constitution.  The Court concludes the same as to Defendant's Motion for similar reasons.

Defendants recognize that the Court has largely already addressed their arguments in its First MSJ Order, *see* ECF No. 99 at 12, but the Court includes some additional explanation below.  As in its First MSJ Order, the Court concludes that the January 2020 amended charging documents incorporated the Final Report by reference.  *See* ECF No. 92 at 16–22.

Article X, Section 6 of the AFSCME Constitution requires charges to "be specific, citing in detail the nature, the date, and the circumstances of the alleged offense and, where a violation of a constitutional provision is alleged, the specific Section shall be cited, along with the specific act or failure to act which constitutes the alleged violation."  ECF No. 80-14 at 23.  The parties treat Article X, Section 2(B) of the AFSCME Constitution as the constitutional provision at issue.  *See* ECF No. 78-1 at 7; ECF No. 93 at 22–23.  That section provides that "[m]isappropriation, embezzlement, or improper or illegal use of union funds," may "constitute the basis for the filing of charges."  ECF No. 80-14 at 20.

As the Court explained in the First MSJ Order, neither the charging documents nor the Final Report explicitly cite Article X, Section 2(B).  *See* ECF

No. 92 at 37.  But the charging documents accuse Plaintiffs of "misappropriation," "theft," "embezzlement," "improper use," and/or "illegal use" of union funds in violation of the UPW and AFSCME Constitutions.  *See, e.g.*, ECF Nos. 56-9, 56-12.  By using the language that mirrored Section 2(B), the charging documents at least arguably described the constitutional provision with sufficient specificity to put Plaintiffs on notice and to allow them to prepare a defense.  *See* ECF No. 92 at 37.  Still, the Court cannot say as a matter of law that the use of such language meets the explicit requirement of Article X, Section 6 to cite the specific section of the constitutional provision at issue.  The Court notes that even affording Defendants the "high degree of deference" that they are due, *United Brotherhood of Carpenters & Joiners, Lathers Local 42-L v. United Brotherhood of Carpenters & Joiners*, 73 F.3d 958, 961 (9th Cir. 1996) (citation omitted), it is unclear that their interpretation is reasonable.  Defendants' evidence in support of the contention that their charges were sufficiently specific consists of the declaration of Richard Abelson, the former Chairperson of the AFSCME Judicial Panel, in which he states, "the charges in this case were well within the specificity required by the [AFSCME] Constitution, that is, they provided the accused the necessary notice of the bases of the charges so as to allow the accused parties to prepare an effective defense."  ECF No. 80-2.  But Abelson's interpretation is insufficient to meet Defendants' burden on summary judgment in light of the plain language of

Article X, Section 6 that requires specific elements be included in charges.  The Court thus denies Defendants' Motion as to this theory.

### 4.      Guilty Of Uncharged Conduct

Plaintiffs alleged that Defendants violated both the LMRA and LMRDA by finding them guilty of uncharged conduct.  Defendants moved for summary judgment on the matter before the Court's First MSJ Order, which denied Plaintiffs' motion as to liability on the theory.  *See* ECF No. 92 at 22–32.  The reasoning and the explanation in the First MSJ Order apply here in equal force and thus the Court denies Defendants' Motion.  *Id.*

Even incorporating the Final Report into the charging documents, *see* ECF No. 92 at 16–22, there are factual questions as to whether Defendants found Plaintiffs guilty of uncharged conduct.  Because the Court addressed the issue extensively in its First MSJ Order, ECF No. 92 at 22–32, it notes only a few details here.  First, as to Nakanelua, the Decision included the following about an approximately $165,000 check for a documentary film that Nakanelua signed that was not mentioned in the charging documents nor in the Final Report:

> Dayton Nakanelua is found guilty of violating Article X, Section 2(B) of the [AFSCME] Constitution for his overall failure to exercise his fiduciary responsibility over UPW's finances, including for submitting expenses and obtaining reimbursement without adequate documentation, and counter-signing the $165,603 check for a documentary film without approval by the SEB in violation of the UPW Constitution and

> when Brother Wataru was both available, and Brother Nakanelua
> knew about Wataru's valid reservations.

ECF No. 80-11 at 44–45.  Defendants argue that while the Judicial Panel was

concerned about Nakanelua's conduct regarding the check, *see* ECF No. 99 at 14,

it was not the basis for the Decision's conclusion of guilt.  Defendants focus on

language earlier in the Decision that Nakanelua's signing of the check

"represent[ed] the height of arrogance" and formed the basis for a separate charge.

ECF No. 80-11 at 41–42; ECF No. 78-1 at 24.  But the plain language of the

concluding paragraph of the Decision finding Nakanelua guilty of various things

"*and* counter-signing the $165,603 check for a documentary film without

approval" raises a factual issue as to what formed the basis of the Judicial Panel's

decision of guilt and whether the panel would have found him guilty regardless of

the check.  ECF No. 80-11 at 45 (emphasis added); ECF No. 92 at 28.

Second, as to Endo, the Decision arguably finds her guilty of the following

conduct:

- General failure to oversee the financial records and practices of UPW on a day-in and day out basis.  ECF No. 80-11 at 37, 44.
- Obtaining reimbursement for her expenses placed on her own credit card before Nakanelua approved her expenses.  *Id.* at 38, 44.
- Making credit card payments without proper documentation.  *Id.* at 38, 44.
- Submitting expense reports for others when documentation was missing.  *Id.* at 38.
- Failing to maintain an inventory of gift cards and office equipment.  *Id.* at 38, 44.

- Failing to maintain adequate leave records.  *Id.* at 38, 44.
- Not regularly reconciling bank accounts.  *Id.* at 38, 44.
- Keeping cash in her desk for months after a canceled event.  *Id.* at 39.
- Receiving per diem payments that were not supported by a properly documented expense report.  *Id.* at 39.
- Inability to maintain and file receipts and prepare expense reports on a timely basis in conformance with the Financial Standards Code.  *Id.* at 44.

In the First MSJ Order, the Court noted that the Final Report, and thus the charging documents, described some of the conduct for which Endo was found guilty.  ECF No. 92 at 32.  And because Plaintiffs bore the burden on their motion for partial summary judgment, but failed to present specific evidence that conduct outside of the Final Report formed the basis for the finding of guilt, they had not met their burden.  Here, the burden is on Defendants, and Endo has raised at least one example of conduct that the Decision holds her guilty for that does not appear in the Final Report:  any issue relating to Endo's receipt of reimbursements for union expenses prior to obtaining approval.  *See* ECF No. 94 ¶ 50.

The Decision addressed Endo's receipt of reimbursements before they were approved in the context of "a series of expense reports" that "were submitted as part of UPW's response to the audit report and were referred to by Sister Endo for the purpose of showing there was documentation for all of her expenses."  ECF No. 80-11 at 19.  The Judicial Panel also remarked that there "was considerable testimony" about the expense reports.  *Id.*  These reports, in the estimation of the

Judicial Panel, "established that some of her expenses were reimbursed before they were approved." *Id.* But the Final Report does not highlight that alleged problem with the expense reports. Nor is the problem identified in any of the charging documents. Thus, there is at least a factual issue as to whether the Judicial Panel found Endo guilty of uncharged conduct.

Defendants also argue that Plaintiffs' uncharged conduct claim fails because the Judicial Panel's decision was based on Plaintiffs' testimony during the hearing. *See* ECF No. 78-1 at 24. Plaintiffs' alleged injury stems from the lack of notice inherent in being convicted of uncharged conduct. That the evidence may have come from Plaintiffs' own testimony did not absolve Defendants from charging them so that Plaintiffs could have prepared a defense.[3]

### 5.   Sufficiency Of Evidence

Defendants move for summary judgment on Plaintiffs' theory that the record did not support a finding of guilty. ECF No. 78-1 at 24, 26. Plaintiffs pursue this

---

[3] Defendants also argue that Plaintiffs have not shown that any violation of the LMRDA prejudiced them. ECF No. 78-1 at 27. The Ninth Circuit has never read a prejudice element into an LMRDA claim but has intimated one may be required. *See Johnson v. Nat'l Ass'n of Letter Carriers Branch 1100*, 182 F.3d 1071, 1074 (9th Cir. 1999). To the extent that a showing of prejudice is necessary under either the LMRDA or the LMRA, the Court concludes there is a factual question as to whether Plaintiffs were sufficiently on notice to prepare a trial defense. If Plaintiffs were found guilty of uncharged conduct, and had no other notice regarding the possible violations, then they had no basis to form a defense. *See id.* at 1076–77 (holding that a complete absence of factual detail in a charging document is inherently prejudicial).

theory under the LMRA and LMRDA. ECF No. 1 ¶¶ 49, 55. In general, Defendants argue that the Final Report and Plaintiffs' own testimony are sufficient to establish guilt. *See* ECF No. 78-1 at 24. The Court concludes that Defendants are entitled to summary judgment on Plaintiffs' claims to the extent Plaintiffs challenge the sufficiency of the evidence.

"[C]onviction on charges unsupported by any evidence is a denial of due process[.]" *Int'l Brotherhood of Boilermakers v. Hardeman*, 401 U.S. 233, 246 (1971) (citations omitted). "The burden of proof regarding disciplinary charges against a union member is low — the charging party must provide only 'some evidence at the disciplinary hearing to support the charges made.'" *Georgopoulos v. Int'l Brotherhood of Teamsters*, 942 F. Supp. 883, 895 (S.D.N.Y. 1996) (quoting *Hardeman*, 401 U.S. at 246) (some internal quotation marks and other citation omitted), *aff'd*, 116 F.3d 1472, 1997 WL 355346 (2d Cir. 1997) (unpublished table decision). And, "a union's interpretation of its own rules, regulations, and constitution is entitled to a high degree of deference." *United Brotherhood of Carpenters & Joiners, Lathers Local 42-L*, 73 F.3d at 961 (citation omitted). Courts should decline to "construe the written [union] rules in order to determine whether particular conduct falls within or without their scope." *Hardeman*, 401 U.S. at 244–45.

The Court concludes that Defendants found Plaintiffs guilty based on "some evidence."  The Final Report explains in detail various issues with reimbursement processes at UPW, including the use of after-the-fact certifications.  *See* ECF No. 80-15 at 50; *see generally id.* at 50–76.  It also describes issues with credit card payments.  As to Nakanelua, the first page of the Final Report provides:

> We are greatly concerned that UPW has not paid sufficient attention to the requirements of the Financial Standards Code. There does not appear to be meaningful oversight on how funds are spent or accounted for and as detailed below, the opportunity for abuse or misuse of union funds exists as a result.  The UPW Constitution provides that the State Director is responsible for all financial matters of UPW on a day to day basis, including ensuring that funds are properly collected, spent and accounted for, and this inherently includes oversight of those who are engaged in these activities for the Local.

ECF No. 80-15 at 52.  The Final Report then lists "areas of concern" and details specific issues within each of those areas, including conduct related to Endo.  *See id*.  The Final Report also includes a statement from Nakanelua that he "take[s] full responsibility for the draft audit report findings."  ECF No. 80-15 at 76.  That statement alone may meet the deferential "some evidence" statement.

But Plaintiffs also provided their own documents in response to the Final Report and testified in their defense at the Judicial Panel trial.  While Plaintiffs' own testimony may not allow Defendants to find Plaintiffs guilty of uncharged conduct, there is no reason it cannot serve as sufficient evidence for charged conduct.  For example, Endo testified to keeping an envelope of cash from a

31

canceled event on her desk and that there was no expense voucher or anything attached.  *See* ECF No. 80-13 at 15–16.  This is evidence that could sustain a conviction under Article X, Section 2(B)'s prohibition against "improper or illegal use of union funds."  ECF No. 80-14 at 20.

In Plaintiffs' opposition to the Motion, they attempt to offer different alternative interpretations of the evidence presented, *see* ECF No. 93 at 24–26, but interpreting the evidence is outside of this Court's purview.  The "some evidence" burden of proof is low, and the Court must defer to Defendants' interpretations of their rules.  Thus, the Court finds that the evidence supporting Plaintiffs' guilt was sufficient under the deferential some evidence standard.  The Court grants Defendants' Motion on this theory.

## B.  Count III – Conversion

Under Hawaiʻi law, the elements of conversion are:  "'(1) A taking from the owner without his consent; (2) an unwarranted assumption of ownership; (3) an illegal use or abuse of the chattel; and (4) a wrongful detention after demand.'"  *Tsuru v. Bayer*, 25 Haw. 693, 696 (Haw. Terr. 1920) (citation omitted); *see also Jass v. CherryRoad Techs., Inc.*, 472 F. Supp. 3d 787, 796 (D. Haw. 2020) (same).  "'[T]he defendant's knowledge, intent, motive, mistake, and good faith are generally irrelevant' to a conversion claim"; conversion takes place when the defendant "'intends to deal with the property in a way which is in fact inconsistent

with the plaintiff's right.'"  *Yoneji v. Yoneji*, 136 Hawai'i 11, 16, 354 P.3d 1160,

1165 (App. 2015) (quoting *Freddy Nobriga Enters., Inc. v. State, Dep't of*

*Hawaiian Home Lands*, 129 Hawai'i 123, 130, 295 P.3d 993, 1000 (App. 2013))

(other citation omitted).  Even a temporary taking constitutes a conversion.  *See*

*Tsuru*, 25 Haw. at 696.

Defendants move for summary judgment on Endo's conversion claim,

arguing that Endo cannot prove that she owned the disputed chattel nor that UPW's

taking was unwarranted.  ECF No. 78-1 at 28.  The Court concludes that there are

factual issues that preclude summary judgment.

First, Defendants argue that Endo cannot prove ownership of the cash or the

stamps that are part of her conversion claim.  ECF No. 78-1 at 28–29.  Endo

responds that she has raised a triable issue as to ownership.  ECF No. 93 at 29–31.

As to the disputed cash, Endo argues that her ability to identify the amount and

location of the cash without having access to her office demonstrates that the cash

was hers.  *See* ECF No. 93 at 29–30; ECF No. 94-13 (email to Defendants

describing the allegedly converted items).  Endo also declared that she had her own

system of organization such that she knew where items were located.  ECF No. 94-

2 at 3.  During her deposition, Endo testified that she withdrew the cash over time

and kept it in her office for situations where she needed to give a birthday present

or contribute money to a gift in the office or for coffee runs and the like.  ECF No.

94-12 at 8–9.  Reading these facts in the light most favorable to Endo as the non-moving party, she has raised a triable issue that the cash was hers.  Defendants' argument that Endo cannot establish ownership over the cash at issue because she also kept the union's cash in her office is insufficient to obtain summary judgment.  Their argument goes to the weight of the evidence and a reasonable factfinder could find in Endo's favor.

Likewise, regarding the postage stamps, Endo declares that she purchased the stamps for personal use.  ECF No. 94-2 at 3.  She also stated that she only kept UPW stamps in her office when she was preparing the union's holiday cards for mailing.  *Id.*  Even Defendants acknowledge that Endo kept some personal stamps in her office.  *See* ECF No. 80 ¶ 40 (noting that Endo would sometimes sell personal stamps to UPW).  While some receipts for reimbursement can be matched to the stamps in the office, Defendants admit that they do not cover all the stamps in the office.  *See id.* ¶ 44.  The Court concludes that there is a triable issue as to ownership of the stamps.

Defendants next argue that Endo has not raised a triable issue regarding whether Defendants' retention of the items was unwarranted.  *See* ECF No. 78-1 at 29–30.  In their view of the law, Endo must prove "a constructive or actual intent to injure" to prevail on her conversion claim.  *See* ECF No. 78-1 at 29 (internal quotation marks and citation omitted).  The Court has previously rejected

Defendants' interpretation of the law and does so again here.  *See* ECF No. 28 at 38 n.4.  Defendants rely on dicta from *Brooks v. Dana Nance & Co.*, 113 Hawaiʻi 406, 153 P.3d 1091 (2007), but in light of the longstanding caselaw discussed in *Yoneji*, the *Brooks* court's statement does not affect the Court's analysis of Endo's conversion claim as it is clear that conversion — an intentional tort — does indeed require an intentional act, but does not require any particular mindset on the part of the defendant.  *See Yoneji*, 136 Hawaiʻi at 16, 354 P.3d at 1165.  Thus, even assuming Defendants did not retain the items in bad faith, their intentional possession of the disputed items, even after Endo demanded Defendants return the items, *see* ECF No. 94-13, is sufficient to raise a triable issue.  The same is true whether the items were eventually returned or not.  *See Tsuru*, 25 Haw. at 696 ("While therefore it is a conversion where one takes the plaintiff's property and sells or otherwise disposes of it, it is equally a conversion if he takes it for a temporary purpose only, if in disregard of the plaintiff's right.").

Thus, the Court denies Defendants Motion as to Endo's conversion claim.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DISMISSES IN PART Defendants' Motion.

Defendants' Motion is GRANTED as to Plaintiffs' LMRA and LMRDA claims based on the theories that Defendants (1) reversed the burden of proof at

trial; (2) that Defendants failed to provide the trial record to Plaintiffs; and (3) that the evidence did not support Plaintiffs' guilt.

Defendants' Motion is DENIED as to Plaintiffs' LMRA specificity of charges theory.

The Court further DENIES Defendants' Motion as to Plaintiffs' LMRA and LMRDA claims that they were found guilty of uncharged conduct.

Defendants' Motion is DENIED as to Endo's conversion claim.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, January 19, 2022.



Jill A. Otake
United States District Judge

Civil No. 20-00442 JAO-KJM, *Nakanelua, et. al vs. United Public Workers, AFSCME, Local 646, et. al*; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

36